HAYWARD DOTSON *v.* WARDEN, CONNECTICUT CORRECTIONAL INSTITUTION, SOMERS

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued June 9—decision released August 8, 1978

*Richard Emanuel,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (plaintiff).

*Arnold M. Schwolsky,* assistant state's attorney, with whom, on the brief, were *George D. Stoughton,* state's attorney, and *Richard F. Banbury,* chief assistant state's attorney, for the appellee (defendant).

PETERS, J. The plaintiff appeals from a judgment dismissing his petition for a writ of habeas corpus. The plaintiff, Hayward S. Dotson, was convicted in 1971, after a jury trial, on three counts of burglary, rape and indecent assault in a case arising out of the rape of an elderly woman in her West Hartford apartment. The plaintiff was given a total effective sentence of ten to seventeen years, which he is currently serving. Although the plaintiff attempted to appeal his conviction and sentence, no appeal was taken because his then special public defender found no basis for appeal and was allowed to withdraw as attorney for the plaintiff. In 1976, the plaintiff filed the present writ alleging that he is being illegally held because of defects in the search warrant which preceded his arrest on a bench warrant, and because of inadequate representation of blacks in the panel from which the jury which found him guilty was chosen. The Superior Court considered the petition for the writ on briefs submitted by the parties, together with transcripts from the earlier trial

including transcripts of a timely motion to suppress and dismiss. The court ruled against the plaintiff on all of his claims and dismissed the writ. This court, upon a request for certification, granted certification limited to the questions concerning the search warrant.

On this appeal, the plaintiff raises three issues concerning the legality of the search warrant which led to the bench warrant under which he was ultimately arrested and convicted. One issue is an attack on findings made, and findings refused, by the trial court. A second issue is the legality of a warrantless search of the premises where the plaintiff was residing at the time of the crime. A third issue is the accuracy of representations made in the process of the subsequent procurement of the search warrant. For reasons stated hereafter in the opinion, we need address only the first two of these issues.

I

The attack on the findings made by the trial court raises a number of questions. Two of these findings involve interpretations and inferences from testimony before the court, and are therefore not subject to correction. *State* v. *Warren,* 169 Conn. 207, 212, 363 A.2d 91 (1975); *New Haven* v. *United Illuminating Co.,* 168 Conn. 478, 483, 362 A.2d 785 (1975). One concerns the court's finding that there was consent to the warrantless search, and will be considered in part II of this opinion.

The request to add material facts allegedly admitted or undisputed comes perilously close to the kind of undiscriminating broadside which this court

has repeatedly deplored. See, e.g., *State* v. *Miselis,* 164 Conn. 110, 114, 318 A.2d 102 (1972). The request fails, in most instances, to establish the materiality of the facts sought to be added; in others, there is an issue of credibility despite the absence of direct contradictory evidence. There is, on this showing, no basis for departure from our well-established rule that findings will not be amended for the addition of facts which would serve no useful purpose or directly affect the ultimate facts upon which the judgment depends. *State* v. *White,* 169 Conn. 223, 242, 363 A.2d 143 (1975), cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399; *State* v. *Warren,* supra, 212.

## II

The propriety of the search without a warrant turns on evaluation of the following facts established by the findings of the trial court: At the time of the commission of the crime for which he was convicted, Hayward Dotson was living in a house in Rocky Hill, which was owned by another person. He had been living there since 1966 or 1967. Dotson had his own room on the second floor of the house; Dotson's room could be locked by a chain lock from the inside of the door, and Dotson had the right to exercise full control over the contents and the occupants of his room. The facts raise two related issues of law: did the owner of the Rocky Hill house consent to the search of her house; did the owner have authority to consent to the search of the plaintiff's room in her house.

On May 13, 1971, within a week of the commission of the crime, a police officer telephoned the owner of the Rocky Hill house, hereinafter the owner, asking to see her. At that time, Dotson was a sus-

pect, and the police visit was a part of the ongoing investigation of his possible culpability in the case. Three police officers arrived at the Rocky Hill house early in the afternoon of the 13th of May. The owner met the officers on her front steps and advised them that she preferred to talk to them outside the house. She stated as the reason for her reluctance to permit their entry that the house was messy and untidy. The officers countered with a statement that if she did not permit an inspection, they could get a search warrant and return, and that it might be embarrassing for her, or words to that effect. The three officers then entered the house, questioned the owner about Dotson's whereabouts and clothing at the time of the crime and searched Dotson's room and bathroom. Dotson was not present and did not consent to the search of his room. Nothing was taken from the house at the time of this search, but later that same afternoon a search warrant was procured and served. Pursuant to this search warrant, the police seized a number of items, including a windbreaker jacket, a pair of dungarees, a piece of towel found in the dungarees pocket, and some keys.

Provisions in the constitution of the United States and the constitution of the state of Connecticut equally and conjointly prohibit unreasonable warrantless searches of private property. U.S. Const. amends. IV and XIV, § 1, Conn. Const. art. I, § 7. A search without a warrant is not unreasonable if a person with authority to do so has freely and voluntarily consented to the search. *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 248, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). Consent is an issue upon which the state bears the burden of proof. *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788,

20 L. Ed. 2d 797 (1968). As this court said in *State* v. *Hanna,* 150 Conn. 457, 470, 191 A.2d 124 (1963), "[a]lthough it is presumed, until the contrary is indicated, that a police officer has acted lawfully . . . this does not raise a concomitant presumption of consent to a search and seizure." Consent requires an affirmative finding of voluntariness; *State* v. *Hanna,* supra, 471; and is not established by a mere acquiescence to a claim of lawful authority. *Bumper* v. *North Carolina,* supra, 548–49.

The question whether consent to a search has in fact been freely and voluntarily given, or was the product of coercion, express or implied, is "a question of fact to be determined from the totality of all the circumstances." *Schneckloth* v. *Bustamonte,* supra, 227. As a question of fact, it is normally to be decided by the trial court upon the evidence before that court together with the reasonable inferences to be drawn from that evidence. *State* v. *Hanna,* supra, 471–72. Such conclusions must be upheld unless they are legally or logically inconsistent with the facts found or unless they involve application of an erroneous rule of law material to the case. *Velsmid* v. *Nelson,* 175 Conn. 221, 225, 397 A.2d 113 (1978); *McLaughlin* v. *Chicken Delight, Inc.,* 164 Conn. 317, 323–24, 321 A.2d 456 (1973); *F. & AK, Inc.* v. *Sleeper,* 161 Conn. 505, 510, 289 A.2d 905 (1971). In this case, the trial court found specifically that the owner permitted the police to search her house, including the plaintiff's bedroom, and concluded, concomitantly, that she had given the requisite legal consent to the search, both on her own behalf and on behalf of Dotson. The issue before us is whether that finding, and that conclusion, were in error. Review of findings of fact of this nature is particularly precarious, since a conclusion about

consent necessarily involves an inquiry into a peculiarly elusive subject, the putative consenter's state of mind, on which the evidence, as in this case, is frequently scant and conflicting. Although this consideration supports acceptance of the finding of the trial court,[1] that deference is in part offset here by the fact that the hearing below was a hearing, without testimony, on briefs and prior records. The prior records contain all of the proceedings at the time of the original trial and the motions relating thereto, which produced the testimony herein relied upon but contained no express contemporaneous finding of consent.

Examination of the subordinate findings of fact relating to the owner's own consent demonstrates how barren a record the state has been able to build to satisfy its burden of proof that the warrantless search was lawful. The owner did not ultimately expressly forbid the police officers' entry, nor did she physically block their way. She was neither in custody nor a suspect. The conversations occurred in a familiar place, her own home. After entry had been gained, she cooperated with the police officers in answering questions and demonstrating objects. Against these factors must be noted the owner's

---

[1] In a concurring opinion in *United States* v. *Faruolo*, 506 F.2d 490, 495 (2d Cir. 1974), Judge Newman noted that "[i]t has become a frequent practice for courts to state as a general rule the Government's heavy burden to establish the voluntariness of consent to a search and then to find that burden met. Assessment of the 'totality of the circumstances,' *United States* v. *Mapp*, 476 F.2d 67, 78 (2d Cir. 1973), and a reluctance 'lightly' to overturn trial court fact-finding on the issue of consent, *United States* v. *Bracer*, 342 F.2d 522, 524 (2d Cir. 1965), have combined to produce a rarely broken line of cases in which findings of consent have been upheld. See, e.g., cases collected in Annot: •Validity of Consent to Search Given by One in Custody of Officers, 9 A.L.R.3d 858 (1966). Neither consideration, however, should insulate cases of this sort from careful scrutiny."

initial stated objection to the entry of the officers, and the very presence of three police officers on indeterminate official business. See *United States* v. *Hearn,* 496 F.2d 236 (6th Cir. 1974), and *Whitman* v. *State,* 25 Md. App. 428, 336 A.2d 515 (1975); and cf. *Stone Machinery Co.* v. *Kessler,* 1 Wash. App. 750, 463 P.2d 651 (1970). Even more significant is the finding that the officers represented to the owner that objection to their entry would be futile, since they could get a search warrant and return, and that this might be embarrassing for her. There is no evidence in the record about the accuracy of this representation as a prediction absent the warrant-less search. At the very least the statement failed to convey to a lay person that the issuance of a search warrant involves the exercise of discretion and judicial power, and is not a mere ministerial act. As Judge Newman noted, concurring in *United States* v. *Faruolo,* 506 F.2d 490, 495–98 (2d Cir. 1974), the intimation that a warrant will automatically issue is as inherently coercive as the announcement of an invalid warrant. See *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968). As *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973), holds, a putative consenter's knowledge of the right to refuse to consent to a search is an important element in the determination of voluntariness. Viewed as a totality, the circumstances revealed by the trial court's subordinate findings do not support its conclusion of free and voluntary consent. The trial court was in error in concluding to the contrary.

The issue of consent in this case involves also the question of the owner's authority to consent to the search of the bedroom and bathroom occupied by

the plaintiff, Dotson. Courts have understandably been concerned not to sanction warrantless searches authorized by those who do not have a stake in refusing consent. Police officers must be able to pursue reasonable investigations wherever their inquiries lead them, but they may not search the property of identified suspects by procuring the consent of their landlords or even their friends. The test applicable to third-party consent requires the state to prove that the consenting party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States* v. *Matlock,* 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). *Matlock* (p. 171) goes on to elaborate in a footnote on what constitutes "common authority." "Common authority is, of course, *not to be implied from the mere property interest a third party has in the property.* The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, see *Chapman* v. *United States,* 365 U.S. 610 [81 S. Ct. 776, 5 L. Ed. 2d 828] (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner* v. *California,* 376 U.S. 483 [84 S. Ct. 889, 11 L. Ed. 2d 856] (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on *mutual use of the property* by persons generally having *joint access or control for most purposes,* so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."

(Emphasis added.) In *Matlock,* the state was held to have met its burden of proof by showing that the consenting person and the suspect regularly shared one room in a house owned by others, that they shared a bed and a dresser, and had, even while living elsewhere, held themselves out as being man and wife, although they were not.

The trial court in this case concluded that the state had met its burden of proof concerning the owner's authority when it rejected the plaintiff's claim of law to the contrary. This conclusion cannot survive the court's subsidiary findings about the extent and the exclusivity of Dotson's control over his room. The court found that the plaintiff exercised control over "everything" in his room, that he could exclude anyone, including the owner, and that he could bring into the room whatever he chose. These findings are not impaired by the testimony reproduced in the parties' appendices that the owner had engaged in sexual intercourse with Dotson, and took care of his laundry. The record here falls far short of the *Matlock* standard of common authority. See also *State* v. *Hacker,* 209 S.E.2d 569, 572 (W. Va. 1974). The trial court was therefore in error in concluding that the owner could validly consent to the search of Dotson's room.

Our conclusion that the warrantless search of the Rocky Hill house was unlawful necessarily invalidates the search warrant which was procured, at least in part, on the basis of information thus illegally obtained. The state has the burden of proving that the subsequent affidavits which supported the granting of the search warrant on the same afternoon as the unlawful search were not critically tainted as the fruit of a poisonous tree. *United*

*States* v. *Giordano,* 416 U.S. 505, 94 S. Ct. 1820, 40 L. Ed. 2d 341 (1974);. *Wong Sun* v. *United States,* 371 U.S. 471, 488, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). Although the trial court found consent to have been properly obtained, and therefore did not reach this issue, it did find that the police examined various unnamed items in the plaintiff's room, and discussed Dotson's windbreaker jackets with the owner. A report of this discussion was made part of the affidavit of Officer Anthony Duffy which supported the application for the search warrant; the windbreaker jacket was one of the items authorized to be seized by the search warrant. It subsequently became an exhibit in the trial. At the trial, Officer Duffy also testified to other exhibits seized from the Rocky Hill house pursuant to the warrant, including keys, dungarees and a piece of toweling. It is evident from the specificity of the description of these various items in the search warrant and the temporal proximity between the warrantless search and the procurement of the warrant that the warrant was fatally tainted. *United States* v. *Armedo-Sarmiento,* 545 F.2d 785, 796 (2d Cir. 1976); *State* v. *Villafane,* 171 Conn. 644, 655, 372 A.2d 82 (1976); *State* v. *Roccasecca,* 130 N.J. Super. 585, 328 A.2d 35 (1974).

The conclusion that the search warrant was the improper product of an unlawful warrantless search makes it unnecessary for us to pursue the plaintiff's claim that the warrant was defective for other reasons. Whether the truthfulness of representations in an affidavit for a search warrant can be attacked on a petition for a writ of habeas corpus should await a case in which the alleged misrepresentations are clearer, and more clearly material, than they are here.

There is error, the judgment is set aside and the case is remanded with direction to grant the writ in accordance with this opinion unless the state within a reasonable time initiates proceedings for a new trial.

In this opinion the other judges concurred.