## STATE OF CONNECTICUT *v.* ANTOINE REDDICK
### (9920)

PETERS, HEALEY, SHEA, GRILLO and SPONZO, Js.

Argued November 5, 1982—decision released March 15, 1983

*G. Douglas Nash,* public defender, for the appellant (defendant).

*Guy W. Wolf III,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

ARTHUR H. HEALEY, J. A six person jury found the defendant, Antoine Reddick, guilty as charged of burglary in the third degree in violation of General Statutes § 53a-103 (a), theft of a firearm in violation of General Statutes § 53a-212, and larceny in the third degree in violation of General Statutes § 53a-124 (a) (1). Reddick then pled guilty to one count of being a persistent offender. A judgment was rendered and the defendant was sentenced to a total effective term of not less than three years and six months nor more than six years. In this appeal, the defendant is challenging the legality of a search of his automobile conducted by the police without a warrant. This search led to the seizure of a cassette deck that subsequently was discovered to have been stolen. This information, in turn, served as the basis for the issuance of a search warrant for premises on Dudley Street in Hamden which led to the seizure at that address of several additional stolen items. The defendant moved to suppress all this evidence. After a hearing on the matter, the trial court, *Falsey, J.,* denied the motion. As grounds for denying the motion, the court held that the search of the car "was voluntary, and necessary for the protection of the police and the accused. It follows from that that the motion to

suppress the evidence taken from the house [Dudley Street] is denied." The defendant has, both in his brief and in oral argument, specifically withdrawn his objection to the seizure of items resulting from the search of the Hamden residence except insofar as that seizure was based upon information obtained from the claimed illegal search of his car. Therefore, the sole issue to be decided by this court is the legality of the search of the defendant's automobile.

From the testimony presented at the hearing on the motion to suppress, the trial court could have reasonably found the following facts: Shortly before 8 a.m. on May 29, 1979, the North Haven police received a report from a Mr. Donlan of New Haven that he had spotted a car resembling the car that was involved in the burglary of his residence two weeks earlier.[1] Donlan reported that he had followed the car to the Giltex/Canada Dry parking lot located on Middletown Avenue in North Haven. Officer Frederick Apuzzo of the North Haven police department was dispatched to the scene, where he was soon afterwards joined by Sergeant Oertel and Officer Anthony Milano of the New Haven police department. Upon arrival, Apuzzo checked the registration plates and determined that the plates did not belong to the car in the parking lot and, in fact, that the car did not have any plates issued for it. The car had not, however, been reported stolen.

The officers went looking for the owner of the car and found the defendant, who admitted owner-

[1] Donlan had not seen the car himself. Rather, he was told by the officer who investigated the burglary that a blue car, possibly a "Chevy," with the same license plates, had been seen driving away from the scene of the Donlan burglary.

ship, working in the Canada Dry warehouse. After Apuzzo told the defendant about the complaint by Donlan, the defendant accompanied the officers to his parked car. While standing beside the car, the defendant admitted that the plates belonged to a friend of his, who owned a similar car, and that he had driven the car to work that day. The police informed him that he was going to be issued a summons for operating an unregistered motor vehicle and for misuse of plates. The defendant was also told by the police that, because the car was not registered, it was going to be towed pursuant to the police department's policy to tow all such vehicles to ensure that when they were returned to the road they would be properly registered.

Apuzzo then testified that as a corollary to the department's towing policy, the police also inventoried the contents of all the cars that were towed "for the protection of ourselves, the owner and the department and the garage that tows it." This was related to the defendant who, according to Apuzzo, responded by saying, "[o]kay." The defendant was then asked if he would open the trunk. At first, the defendant hesitated and wanted to know why. Milano explained to the defendant that, while he was under no obligation to open the trunk,[2] they wanted to "pacify" Donlan, who still insisted that the car was involved in the burglary of his house and whom Milano described as "sort of a police bug." Apuzzo testified that the defendant responded by saying, "I have nothing to hide," after which he himself opened the trunk with his key.

---

[2] The defendant testified that Apuzzo threatened to break open the trunk if he did not open it himself.

Inside the trunk the officers observed a pair of headphones, a blue gym bag, and a piece of electronic equipment which was partially sticking out of a pillowcase. When asked what was inside the pillowcase, the defendant removed the piece of equipment, which turned out to be a Sankyo cassette tape player, showed it to the police and said it was not working. Donlan informed the police that stereo equipment had been stolen from his house, but after looking over the Sankyo cassette player he stated that it was not his. Apuzzo copied the model and serial number as well as the brand name of the cassette player and handed it to the defendant. He testified that his purpose in doing so was "to run it through an NCIC [the police National Computer Information Center] check to determine whether it was a stolen piece of property." He was unable to do this until later that afternoon because the terminal was not working at that time.

At this point, the defendant was given a motor vehicle summons and told to remove any valuable property from the trunk because the car was going to be towed and the police did not want valuable property left in the car. The defendant removed the headphones and the gym bag, but left the cassette player in the trunk.[3] The car was then towed to a private garage in North Haven. At no time during this encounter was the defendant arrested or placed in police custody.

In the afternoon of May 29, 1979, after the vehicle was towed, it was inventoried by Officer Hines

[3] The defendant left it there despite being told that he had "better take that out, too, because somebody might steal it, or something." The defendant testified that he thought it would be safe as long as the trunk was locked.

of the North Haven police department pursuant to departmental policy. One of the items that was inventoried was the Sankyo cassette player which the defendant had left in the trunk. Furthermore, when Apuzzo returned to headquarters, he put the serial number from the cassette player into the N.C.I.C. terminal and the computer reported that it had been stolen in a completely unrelated incident from a house located on Warner Street in Hamden.

The North Haven police relayed this information to the Hamden police department and it was then relied upon by the latter in obtaining a warrant to search a residence on Dudley Street in Hamden where the defendant was believed to have resided.[4] The police executed the warrant and, as a result of the search of the Dudley Street residence, the police seized items that were subsequently admitted into evidence.

The trial court denied the defendant's motion to suppress, finding that the defendant's consent to search the car was voluntary and necessary for the protection of the police and the accused. It also held that "[i]t follows from [the finding of consent] that the motion to suppress the evidence taken from the house [Dudley Street] is denied." In this appeal, the defendant claims that the warrantless search of his automobile was unreasonable under

---

[4] At the hearing on the motion to suppress, the defendant denied that he lived at the Dudley Street residence, but insisted that he lived at 61 Whalley Avenue in New Haven with his wife and child. His motor vehicle license showed the Whalley Avenue address.

the United States constitution; U.S. Const., amends. IV and XIV; and the Connecticut constitution. Conn. Const., art. I § 7.[5]

This court has recognized four situations where warrantless searches of motor vehicles have not been held unreasonable. These include instances where "(1) the search was incident to a lawful arrest (*State* v. *Cari,* 163 Conn. 174, 187, 303 A.2d 7 [1972]); (2) the search was based upon probable cause to believe that the vehicle contained contraband or evidence pertaining to a crime (*Chambers* v. *Maroney,* 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419, rehearing denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 94 [1970]; *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543, 39 A.L.R. 790 [1925]); (3) the search was based upon consent (see *Lewis* v. *United States,* 385 U.S. 206, 87 S. Ct. 424, 17 L. Ed. 2d 312 [1966], rehearing denied, 386 U.S. 939, 87 S. Ct. 951, 17 L. Ed. 2d 811 [1967]; *State* v. *Spellman,* 153 Conn. 65, 71, 212 A.2d 413 [1965]); or (4) the search was conducted not to secure evidence but to inventory the vehicle's contents incident to its impoundment. *Cooper* v. *California,* 386 U.S. 58, 87 S. Ct. 788, 17 L. Ed. 2d 730, rehearing and modification denied, 386 U.S. 988, 87 S. Ct. 1283, 18 L. Ed. 2d 243 [1967]; see note, 26 L. Ed. 2d 893." *State* v. *Tully,* 166 Conn. 126, 134–35, 348 A.2d 603 (1974). In its brief, the state explicitly concedes that the defendant was not under arrest at the time of the search of his trunk in the Giltex/Canada Dry parking lot.

[5] At the suppression hearing, the state raised the issue of whether the defendant had standing to object to the search of the car based upon his alleged lack of ownership. The trial court found that the defendant did own the car and, by implication, had standing to assert any constitutional violation. The state has not appealed this finding.

In addition, the state does not argue that the police had probable cause to search the defendant's vehicle until after it had been taken into custody. Therefore, the seizure of the Sankyo cassette deck. must be justified either under the inventory search exception or the consent exception.

The defendant claims that the search of the trunk of his car was conducted without his consent and, therefore, was in violation of his constitutional rights. The state, on the other hand, claims that the search of the defendant's trunk was conducted with his consent which was voluntarily given and that there was no constitutional violation. We agree with the state and conclude that this issue is dispositive of the appeal.[6]

The state recognizes that it bears the burden of proof on the issue of whether consent was freely and voluntarily given. *Bumper* v. *North Carolina,* 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968); *United States* v. *Sanchez,* 635 F.2d 47, 58 (2d Cir. 1980). It cites *Dotson* v. *Warden,* 175 Conn. 614, 402 A.2d 790 (1978), for the proposition that the conclusion by the trial court that the consent was voluntary should be upheld "unless [it is] legally or logically inconsistent with the facts found or unless [it] involve[s] application of an erroneous rule of law material to the case." Id., 619.

---

[6] For purposes of our analysis on the issue of consent, the question of whether the towing and inventory procedures were valid need not be decided. This is because when the defendant decided to open his trunk for the police, there was no evidence at all that he had any knowledge of the validity of the towing and inventory procedures. Such procedures could thus have had no bearing upon the giving of consent by him. Therefore, the "implied coercion" of Officer Apuzzo's statement presented another question of fact for the trial court to determine in passing upon the issue of consent under the totality of the circumstances.

In *Dotson,* we noted that consent is "a question of fact to be determined from the totality of all the circumstances." Id., quoting *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 227, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); see *State* v. *Zindros,* 189 Conn. 228, 456 A.2d 288 (1983); *State* v. *Chetcuti,* 173 Conn. 165, 172, 377 A.2d 263 (1977); *State* v. *Carbone,* 172 Conn. 242, 252, 374 A.2d 215 (1977); *State* v. *Tully,* supra, 135. Thus, in determining whether the state has sustained its burden on the issue of voluntariness, "no one factor is controlling." *United States* v. *Sanchez,* supra, 58; *United States* v. *Vasquez,* 638 F.2d 507, 524 (2d Cir. 1980). It is for the trial court to decide the issue based on the evidence it deems credible along with reasonable inferences to be drawn from that evidence. *State* v. *Zindros,* supra; *Dotson* v. *Warden,* supra. Its determination will not be upset by this court unless clearly erroneous. *State* v. *Zindros,* supra; see Practice Book § 3060D; *State* v. *Ostroski,* 186 Conn. 287, 294, 440 A.2d 984 (1982). Based upon our review of the transcript of the suppression hearing in this case, we cannot find that the trial court's determination that the defendant voluntarily consented was clearly erroneous.

Prior to giving his consent, the defendant was told by the police that his car was going to be towed and its contents inventoried. If this was the only evidence that the state could point to, it would be under a heavy burden to show that the consent was voluntary. In this regard, we note that this court in *Dotson* v. *Warden,* supra, 621, said that "the intimation that a warrant will auto-

matically issue is as inherently coercive as the announcement of an invalid warrant."[7] Here, the "announcement" by the police that the defendant's car would be towed arguably implied that his refusal would have been futile. This is, however, only one factor to be considered. Here, quite unlike *Dotson,* the record contains sufficient additional evidence to support a finding of voluntariness. According to the testimony of the two police officers,[8] they told the defendant that they wanted to "pacify" Donlan who was there and who insisted that the defendant's car was involved in the burglary of his house. One of the officers testified that they only asked once, and that the defendant was told that he was under no obligation to open the trunk if he did not want to. He was not in custody or under arrest. The defendant showed no signs of being intoxicated or under the influence of drugs, and no force was used. After the police explained their reason for requesting to look inside the trunk, the defendant replied broadly, "I have nothing to hide." He then opened up the trunk with his own key. On the basis of these facts, the trial court's finding, under the totality of the circumstances, that

---

[7] *Dotson* is factually distinguishable from this case. In *Dotson,* the defendant occupied a room in a house owned by another person. While he was a suspect for the crimes of burglary, rape and indecent assault, three police officers visited that house and sought entry. The owner explained her reluctance to permit this. The officers countered her reluctance "with a statement that if she did not permit an inspection, they could get a search warrant and return, and that it might be embarrassing to her, or words to that effect." *Dotson* v. *Warden,* 175 Conn. 614, 618, 402 A.2d 790 (1978).

[8] Although the defendant contested certain of their testimony, we have noted that it is the trial court's responsibility to determine the credibility of witnesses. *Dotson* v. *Warden,* 175 Conn. 614, 619, 402 A.2d 790 (1978).

the defendant voluntarily consented to open his trunk was not clearly erroneous.[9] Therefore, it properly denied the defendant's motion to suppress.

There is no error.

In this opinion the other judges concurred.

---

[9] This conclusion makes it unnecessary to reach any question concerning the validity of the search of the residence on Dudley Street in which the evidence seized was generated by the search of the car.