STATE OF CONNECTICUT *v.* GILBERT DELGADO
(5399)

SPALLONE, STOUGHTON and NORCOTT, Js.

Argued October 14—decision released December 29, 1987

*Caren A. Senter,* with whom, on the brief, was *Anne D. Dexter,* for the appellant (defendant).

*Christopher Malany,* deputy assistant state's attorney, with whom, on the brief, were *Frank D'Addabbo,*

assistant state's attorney, and *Alice Osedach,* legal intern, for the appellee (state).

NORCOTT, J. After a trial by jury, the defendant was convicted of the crimes of assault in the first degree in violation of General Statutes § 53a-59 and carrying a pistol without a permit in violation of General Statutes § 29-35. He appeals from the judgment of conviction.

The defendant claims that the trial court erred (1) in its instructions to the jury, (2) in denying the defendant's motion to suppress a statement he gave after the police arrested him at his home, (3) in sustaining the state's objection to certain evidence of the victim's propensity for violence, and (4) in permitting the state to amend the information to include the charge of carrying a pistol without a permit only one week prior to trial. We find no error.

Evidence was presented from which the jury could have found the following facts. On March 20, 1985, Cynthia Vares, Danny Googe, and the defendant had an altercation near Tony's Pizza Shop in Hartford during which Googe threatened the defendant with a butcher knife. As a result of this incident, Googe was arrested and spent eight days in jail.

Thereafter, the defendant heard from Vares' brother that Googe had been released from jail and was looking for him. As soon as he heard this news, the defendant went home and armed himself with a gun for his protection. He had no permit for the gun. The defendant then walked down to Tony's Pizza where he talked to some friends. After a short time, the defendant walked over to a friend's house. During this walk, the defendant saw Googe on the street. Nothing was said. At approximately 10:45 p.m., the defendant returned to Tony's Pizza and stood outside. While standing outside, the defendant again encountered Googe.

Googe and the defendant became involved in a tense, heated verbal exchange. Googe's tone of voice was loud and he threatened to kill the defendant who had caused his arrest on March 20, 1985. Googe approached the defendant making gestures with one hand while the other hand was either in his pocket or at his side hidden under his jacket. As Googe approached, the defendant retreated warning Googe not to "walk up on him."

What happened next is subject to dispute. Googe testified at trial that, after attempting to show the defendant that he was unarmed, he was shot by the defendant. The defendant's witnesses testified that after Googe approached threateningly close, the defendant pulled the gun and shot Googe after the latter had made one last threatening move.

It is clear that the defendant then shot Googe a second time, immediately left the scene and went to his home. The defendant told his mother, with whom he lived, of the shooting.

Shortly thereafter, the police came to the Delgado home. Detectives Stanley Lukas and Ocell Blocker and other members of the Hartford police department had come to the Delgado home acting on the statement of an eyewitness to the shooting. Upon their arrival, Lukas and Blocker knocked on the front door, identified themselves, requested and received permission to enter. They entered the home accompanied by two or three other officers. Upon entering, they saw the defendant standing in the living room. The officers patted down the defendant, took him outside, and read him his *Miranda* rights.

The police then took the defendant to the police station and placed him in an interrogation room. Approximately one and one-half hours passed before an officer came in and asked the defendant if he would give a statement. The defendant proceeded to give a state-

ment in which he indicated that he bought the gun because he "wanted to be prepared," that Googe took a small step backward after the defendant pointed the gun at him, that the defendant shot Googe the second time after Googe had turned to run. At trial, the defendant denied making these comments or asking for their inclusion in this statement.

At trial, the defendant admitted having shot Googe. His sole claim was that he was acting in self-defense when he fired the gun.

I

A

The defendant's first claim on appeal is that the trial court erred in giving an instruction on flight as consciousness of guilt.[1] The defendant contends that the issue of flight was irrelevant in this case because he admitted having shot Googe. He further contends that by giving an instruction on the irrelevant issue of flight the trial court allowed the jury to find him guilty without considering his claim of self-defense.

We note first that the defendant failed to preserve this claim properly in the trial court. We will review this claim for the first time on appeal, however, because it invokes the defendant's constitutional right to

---

[1] The court's instruction on flight was as follows: "We also have testimony that immediately after the incident the defendant left the scene. The conduct of a person in leaving the scene of a crime, if proven that he was, in fact, at the scene, may be considered in determining the guilt, since if unexplained it tends to prove a consciousness of guilt. The flight of the person accused of a crime is a circumstance which when considered together with all the facts of the case may justify an inference of the accused's guilt. However, flight, if shown, is not conclusive. Flight is to be given the weight to which the jury thinks it is entitled under the circumstances shown. Whether the action of the defendant in the present case in leaving the scene of the incident on Blue Hills Avenue is such as to indicate flight, and the weight to be given to such action in determining guilt, if you find it to constitute flight, is for you, the jury, to decide."

present a defense. *State* v. *Corchado,* 188 Conn. 653, 660, 453 A.2d 427 (1982); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

It has long been established that " ' "[t]he flight of the person accused of crime is a circumstance which, when considered together with all the facts of the case, may justify an inference of the accused's guilt. It does not raise a presumption of guilt." . . .' *State* v. *Rosa,* 170 Conn. 417, 433, 365 A.2d 1135 [1976]." (Citations omitted.) *State* v. *Piskorski,* 177 Conn. 677, 722–23, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); see also *United States* v. *Allen,* 164 U.S. 492, 499, 17 S. Ct. 154, 41 L. Ed. 2d 528 (1896). Before a court gives an instruction on flight, however, the evidence of flight must be both relevant and probative. *State* v. *Piskorski,* supra, 723. " 'One fact is relevant to another fact whenever, according to the common course of events, the existence of the one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable.' " *State* v. *Schaffer,* 168 Conn. 309, 317, 362 A.2d 893 (1975).

We find that evidence of flight was relevant in this case even though the defendant admitted to shooting Googe. The evidence of flight introduced by the prosecutor tended to show that the defendant believed that what he had done was not merely an act of self-defense but, rather, was something that was considered wrong in the eyes of the law. While this evidence was not absolute proof of guilt, it was sufficient to allow the jury to infer a consciousness of guilt on behalf of the defendant. Therefore, we conclude that evidence of flight was admissible. B. Holden & J. Daly, Connecticut Evidence § 67.

Since the evidence of flight was relevant, it was proper for the jury to consider it in its deliberations.

In considering the evidence, the jurors were free either to reject it or to accept it as they saw fit. They were not required to find that the defendant was guilty merely because he fled. *State* v. *Rosa,* supra, 433. Accordingly, we find no merit in the defendant's claim that the instruction on flight precluded the jury from considering the defendant's claim of self-defense.

### B

The defendant's second claim of instructional error is that the trial court erred in refusing to give the defendant's requested instruction that he had a right to go out in public and continue his legitimate business despite the threats of Googe. We disagree.

The record indicates that the defendant's requested instruction on self-defense covered over five pages of text. Included in the defendant's requested instruction was a statement that the fact that the defendant went out in public after learning of Googe's threats did not necessarily make him the aggressor. The defendant also requested that the jury be instructed that he had a right to go out in public and continue his lifestyle despite the threats of Googe. The trial court denied the defendant's request and proceeded to charge at length on the law of self-defense. The defendant took exception to the trial court's denial of his request and to the subsequent charge on self-defense. When the trial court asked that the defendant provide some meaningful authority for his requested instruction, the defendant replied that he was relying on the "language at page 666" in *State* v. *Corchado,* supra. The trial court inspected the defendant's citation and declined to amend its charge.

"When a proper request is filed pursuant to Practice Book § 852 or exception is taken pursuant to § 854 the test is whether the charge properly covered the substance of the written request or properly and adequately covered the specific subject matter of the excep-

tion." *State* v. *Kurvin,* 186 Conn. 555, 561, 442 A.2d 1327 (1982). " '[T]he charge must be considered from the standpoint of its effect on the jury in guiding them to a proper verdict.' *State* v. *Bell,* 153 Conn. 540, 544, 219 A.2d 218 (1966)." *State* v. *Williams,* 182 Conn. 262, 269, 438 A.2d 80 (1980). " 'The trial court is not under a duty in a criminal proceeding to charge in the identical language requested if its charge is accurate, adequate and, in substance, properly includes material portions of the defendant's request; its responsibility is performed when it gives instructions to the jury in a manner calculated to give them a clear understanding of the issues presented for their consideration, under the offenses charged and upon the evidence, and when its instructions are suited to their guidance in the determination of those issues.' *State* v. *Harden,* 175 Conn. 315, 322–23, 398 A.2d 1169 (1978)." *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986); see also *State* v. *Fuller,* 199 Conn. 273, 279, 506 A.2d 556 (1986); *State* v. *Timmons,* 7 Conn. App. 457, 463, 509 A.2d 64 (1986). Viewing the trial court's instructions against these standards, we find that the defendant's claim is meritless.

With respect to the self-defense charge, the trial court began its instructions by reciting the pertinent parts of General Statutes § 53a-19. The court stated further that a self-defense claim was valid if an aggressor's "act" created a reasonable belief that "danger was actual, real, imminent, or unavoidable." The court went on to equate the "aggressor" with one who was actually "using or about to use deadly physical force." The court then charged that the relevant inquiry was who was the aggressor, and that this determination depended upon what the defendant did during the actual confrontation.

The trial court's instruction on self-defense, as noted above, was an adequate and accurate explanation of

the law of self-defense. Further, the instruction sufficiently encompassed the defendant's requests concerning his claim that he was not the aggressor. The defendant was not entitled to an instruction with the specific language he requested. "It is irrelevant that the court chose not to use the precise wording or language which the defendant requested if ' "the charge properly covered the substance of the written request." ' *State* v. *Harrell,* 199 Conn. 255, 269, 506 A.2d 1041 (1986); *State* v. *Cooper,* 182 Conn. 207, 211, 438 A.2d 418 (1980)." *State* v. *Timmons,* supra, 469. Our review of this claim indicates that the trial court's instructions to the jurors as a whole fairly presented the case to them so that it is not reasonably possible that they were misled. *State* v. *Corchado,* supra 660.

## II

The defendant's next claim of error is that the trial court erred in denying his motion to suppress the statement he gave after his arrest. The defendant claims that the statement was the fruit of an illegal warrantless arrest in that the consent given by the defendant's mother to enter the house was not voluntary.

A warrantless entry into a home by the police to make a routine felony arrest is illegal, absent either exigent circumstances or consent. *Payton* v. *New York,* 445 U.S. 573, 577–78, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980); *State* v. *Cardona,* 6 Conn. App. 124, 134, 504 A.2d 1061 (1986). This rule is based on the principle that "[a]t the very core of the Fourth Amendment stands the right of the accused to retreat into his own home and there be free from unreasonable government intrusion."[2] *Silverman* v. *United States,* 365 U.S. 505,

[2] The fourth amendment prohibitions against unreasonable searches and seizures were made applicable to the states via the fourteenth amendment to the United States constitution in the case of *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). The defendant also claims

511, 81 S. Ct. 679, 51 L. Ed. 2d 734 (1961). When an arrest is made after a warrantless entry, the state has the burden of proving either the existence of exigent circumstances or that consent to enter was obtained from one authorized to give consent. *State* v. *Jones,* 193 Conn. 70, 78–79, 475 A.2d 1087 (1984).

When the entry is justified on the basis of consent, the state has the additional burden of showing that the consent was voluntarily given. *State* v. *Cobbs,* 7 Conn. App. 656, 659, 510 A.2d 213 (1986). To be voluntary, consent must be the "free and unconstrained choice"; *Schneckloth* v. *Bustamonte,* 412 U.S. 218, 223, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); of the one giving it, and it cannot be obtained by duress or coercion, express or implied. Id. Consent is more than just "a mere acquiescence to a claim of lawful authority." *Dotson* v. *Warden,* 175 Conn. 614, 619, 402 A.2d 790 (1978). Whether consent is voluntary is "a question of fact to be determined from the totality of the circumstances." *Schneckloth* v. *Bustamonte,* supra, 227. The trial court's finding of consent must stand unless it is clearly erroneous. *State* v. *Reddick,* 189 Conn. 461, 469, 456 A.2d 1191 (1983).

The defendant concedes that the trial court could have found that consent was given in this case. The only question is whether that consent was the result of coercion or duress. We find that it was not.

The record reveals that on the night of the shooting, the defendant's mother was at home with her daughter when her son arrived home. The defendant proceeded to tell his mother of the shooting. Mrs. Delgado then

that the entry was made in violation of his rights under article I, § 7 of the Connecticut constitution. As was noted in *State* v. *Zindros,* 189 Conn. 228, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984), the protection afforded under article I, § 7 of the Connecticut constitution is commensurate with that afforded by the fourth amendment.

suggested that she and her son go to the police station. Thus, when the police arrived at the Delgado home a short while later, it is unlikely that Mrs. Delgado was unaware of their purpose.

When the police arrived, only two of the officers approached the door. One of the officers identified himself as a member of the police force and requested permission to enter. It is true that the officer did not advise Mrs. Delgado of her right to refuse entry, but it has been held that "such advice is not a prerequisite to a voluntary consent." *State* v. *Van Der Werff,* 8 Conn. App. 330, 341, 513 A.2d 154 (1986), citing *Schneckloth* v. *Bustamonte,* supra, 248–49. We cannot say, given these facts, that under the "totality of the circumstances" the consent given by the defendant's mother was not voluntary.

### III

The defendant's next assignment of error involves the trial court's refusal to permit the defendant to cross-examine the victim regarding prior criminal offenses. The defendant claims that the court's ruling violated his constitutional right of confrontation in that such cross-examination was essential to his claim of self-defense.

At trial, the defendant sought to cross-examine the victim about a prior conviction for robbery, several prior convictions for breach of peace, a pending charge of breach of peace, and the fact that the victim carried a knife. The defendant argued that such evidence was probative of the victim's violent nature, and was, therefore, admissible. After an objection by the prosecution, the trial court ruled that the victim could be cross-examined about both the robbery conviction and the fact that he carried a knife. The trial court, however, prohibited cross-examination on the other matters.

Ordinarily, upon a showing of a proper foundation for a claim of self-defense, the "defendant may introduce evidence of the violent character of the victim . . . . *State* v. *Miranda,* 176 Conn. 107, 405 A.2d 622 (1978)." *State* v. *Delgado,* 8 Conn. App. 273, 286, 513 A.2d 701 (1986). Before evidence of the victim's character is admissible, however, the defendant must make a showing that the proffered evidence is relevant to his propensity for violence. *State* v. *Delgado,* supra, 281.

In this case, the trial court ruled that a proper foundation had been laid for the defendant's claim of self-defense. The trial court found, however, that the evidence concerning the defendant's breach of peace violations was not relevant to the issue of self-defense. We agree.

With regard to the breach of peace convictions, we note that it is possible to commit the crime of breach of peace, as that crime is defined in General Statutes § 53a-181,[3] without engaging in violent behavior. We note further that the defendant made no showing in this case that the victim's convictions of breach of peace were the result of violent behavior. We find, therefore, that the victim's convictions did not indicate a propensity for violence. Absent a showing that it tends to indicate a propensity for violence, a misdemeanor conviction for breach of peace has no relevance in this case.

With regard to the then pending charge of breach of peace, we find that it too was inadmissible. First,

---

[3] General Statutes § 53a-181 (a) provides in relevant part: "A person is guilty of breach of peace when, with intent to cause inconvenience, annoyance or alarm, or recklessly creates a risk thereof, he: (1) engages in fighting or in violent, tumultuous or threatening behavior in a public place; or (2) assaults or strikes another; or (3) threatens to commit any crime against another person or his property; or (4) publicly exhibits, distributes, posts up or advertises any offensive, indecent or abusive matter concerning any person; or (5) in a public place, uses abusive or obscene language or makes an obscene gesture; or (6) creates a public, hazardous or physically offensive condition by any act which he is not licensed or privileged to do."

we note that a mere arrest is indicative of nothing. The fact of an arrest is as consistent with innocence as it is with guilt. 3A J. Wigmore, Evidence (Chadborn Rev.) § 980a; see *Lawrence* v. *Kozlowski,* 171 Conn. 705, 711–12 n.4, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). Second, we note that evidence of the facts underlying the arrest were adduced later in the trial. The defendant had the opportunity to call the victim as his own witness and question him as to that incident. Accordingly, we find no error in the court's restriction of the defendant's cross-examination of the victim.

## IV

The defendant's final claim is that he was prejudiced in the preparation of his defense because the trial court allowed the state to amend the information only one week before the commencement of trial. After affording this claim the appropriate scope of review, we find that it is completely without merit. *State* v. *Ramos,* 176 Conn. 275, 279, 407 A.2d 952 (1978); *State* v. *Huff,* 10 Conn. App. 330, 345, 523 A.2d 906 (1987).

There is no error.

In this opinion the other judges concurred.