[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I. FACTS
On November 25, 1999, Thanksgiving Day, at approximately 6:30 P.M., Conservation Officer Michael Enright (Officer Enright) of the Department of Environmental Protection received information of a complaint via radio from his dispatcher. Officer Enright contacted the complainant, who informed him that the defendant, Harvey Dubay, was illegally storing an eight-point buck on his property. After conferring with his captain, Officer Enright, accompanied by Conservation Officer Eric Johnson, proceeded to the defendant's home.
Shortly after 7:00 P.M., the officers arrived at the defendant's home, which fit the description given by the complainant. Upon arrival, the officers knocked on the door and were greeted by the defendant's wife. Officer Enright asked to speak to Harvey Dubay and was told Mr. Dubay was sleeping. Mrs. Dubay requested that the officers speak directly to her regarding the matter; however, Officer Enright informed her that he needed to speak to Mr. Dubay. Mrs. Dubay went to get the defendant while the officers waited outside of the residence. The officers identified themselves, told the defendant why they were there, and asked the defendant if he shot a deer earlier that morning. The defendant admitted shooting a deer that morning. The officers asked if they could see the deer and indicated that if it was properly tagged, they would leave. CT Page 12903
The defendant agreed and took the officers to the building where the deer was stored. Officer Enright saw the head of a deer on the floor and noticed that it was improperly tagged. The officer then asked to see the remainder of the deer, the defendant agreed and took the officers to a cooler. Officer Enright observed two deer carcasses in the cooler. When asked who shot the other deer, the defendant indicated that his friend shot the other deer, but told the officer he would not tell them the name of this friend.
The officers and the defendant exited the building and went to the patrol car. While at the patrol car, the officers' dispatcher relayed further information received from the complainant. The complainant alleged that the defendant was illegally harvesting deer at night using a light and rifle (jacklighting) and that he had a complete setup of the equipment to do this on his property. The officers asked the defendant if they could look inside the building again to see if such equipment was in the building. Officer Enright notified the defendant that if the defendant took them into the building, they would specifically be looking for such equipment. If the defendant did not agree to allow them into the building, the officers would have required a warrant to search the building and one officer would have guarded the building while the other sought a warrant.
The defendant verbally consented to the search and took the officers to the first level of the building. Officer Enright asked the defendant if he would take them to the second floor of the building. The defendant agreed. The officers then asked to see what was beyond a set of double doors, and the defendant allowed the officers to go through the doors. Officer Enright noticed a ladder going up into the rafters of the building and asked the defendant if he could climb the ladder and look around. Again, the defendant verbally agreed. Officer Enright climbed the ladder, walked to the gable end of the building, and then noticed the equipment that the complainant described. The officer informed the defendant of his discovery and told the defendant that he needed to take photographs. The officer then took photographs, took the equipment as evidence, and issued a summons to the defendant for Possession of Jacklighting Equipment in violation of General Statute § 26-85 and two counts of Illegal Possession of Deer in violation of General Statute § 26-82.
The defendant now claims that he was coerced into or was unable by reason of his intoxication to provide consent to the search in violation of his rights under Article First, section 7 of the Connecticut Constitution and the Fourth Amendment to the United States Constitution. The defendant also argues that the exclusionary rule should apply to CT Page 12904 suppress the evidence seized and any statements taken from the defendant as a result of the alleged unlawful search.
 II. ISSUE PRESENTED
The defendant argues that the officers violated his rights under theFourth Amendment to the United States Constitution and Article First, Section 7, of the Connecticut Constitution by coercing his consent to search. The Fourth Amendment to the United States Constitution provides:
 "The Rights of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
Article First, Section 7, of the Connecticut Constitution provides:
 "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."
Specifically, the defendant argues in his Motion to Suppress[1] that the Department of Environmental Protection violated his rights to be free from unreasonable search and seizures by coercing his consent to the search. The defendant alleges that he was fuddled, half asleep, overcome by the presence of the officers, and had no choice but to consent to the search of his property.
A warrantless search is "per se unreasonable"; however, consent is a well established exception to this rule. See Payton v. New York,445 U.S. 573, 586, 100 S.Ct. 1371, 1380 (1980); Schneckloth v.Bustamonte, 412 U.S. 218, 219, 935 S.Ct. 2041, 2058 (1973); State v.Reagan, 209 Conn. 1, 7, 546 A.2d 839, 842 (1988); State v. Badgett,200 Conn. 412, 423, 512 A.2d 160, 167 (1986); Dotson v. Warden,175 Conn. 614, 618, 402 A.2d 790, 793 (1978); State v. Boyd,57 Conn. App. 176, 180 ___ A.2d ___ cert denied, 253 Conn. 912, ___ A.2d ___ (2000); State v. MacNeil,28 Conn. App. 508, 513, 613 A.2d 296, 300
(1992). The defendant maintains that his consent was not a product of unconstrained choice, but of coercion.
CT Page 12905 Consent to a warrantless search must be given by one with the authority to consent. Dotson v. Warden, supra, 175 Conn. at 618. The search must be based on unconstrained choice and not be a result of overborne will, and whether such consent has been freely given is to be determined from the totality of circumstances. United States v. Garcia, 56 F.3d 418, 422 (2d Cir. 1995); Schneckloth v. Bustamonte, supra, 412 U.S. at 227, 248; Statev. Reagan, 209 Conn. 1, 4, 546 A.2d 839, 842 (1988); Dotson v. Warden,
supra, 175 Conn. at 619; State v. Vargas, 34 Conn. App. 492, 496,642 A.2d 47, 49 (1994), cert. denied, 230 Conn. 907 (1994); State v.MacNeil, 28 Conn. App. 508, 513-14, 613 A.2d 296, 300 (1992). Mere acquiescence to police authority does not constitute consent. State v.Jones, 193 Conn. 70, 79 475 A.2d 1087, 1093 (1984); Dotson v. Warden,
supra, 175 Conn. at 619; State v. Fields, 31 Conn. App. 312, 325,624 A.2d 1165, 1172 (1993).
The defendant's claim conflicts with his actions on November 25, 1999. The officers casually asked the defendant to see the deer he shot that day and the defendant agreed. When the officers noticed the carcass of a second deer and asked who shot the second deer, the defendant revealed that it was a friend but refused to reveal this friend's name. The officers did not pursue that issue further and exited the building. The scope of one's consent to a search, such as the duration, area, and intensity of the search, can be determined by express or implied limitations. State v. Reagan, supra, 209 Conn. 1 at 5. As such, the court finds that the defendant consented to most of the officers' queries but not all.
When receiving additional information that the defendant was engaged in jacklighting activity and had jacklighting equipment on his property, the officers asked the defendant if they could go back into the building. Officer Enright told the defendant that they would either be going into the building based on his consent or one of the officers would apply for a warrant while the other guarded the building. An indication by an officer that a warrant will automatically issue if one does not consent to a search is inherently coercive, whereas, the indication that an officer will apply for a warrant is not inherently coercive. State v.Martinez, 49 Conn. App. 738, 744-45, 718 A.2d 22, 26 (1998). The defendant had a choice, either to consent or to refuse and wait to be presented with a warrant. The defendant consented and took the officers into the first floor of the building.
At each point the officers wished to search another area of the building, they first asked the defendant for his permission and received his verbal consent. Prior to the conclusion of a search based on consent, one's consent can be limited or withdrawn. Id. Harvey Dubay did not imply or verbally express any limitations on his consent or any CT Page 12906 desires to withdraw his consent. The defendant's refusal to identify the friend he claimed shot the second deer evidences his recognition of his ability to refuse the officer's inquires. Further, while the defendant maintains that he did not sign a consent form, it is not necessary for consent to be in writing to be valid. State v. Fields, supra, 31 Conn. App. at 32S.
Both the defendant and his wife testified that the defendant was intoxicated from his Thanksgiving holiday festivities and could not have provided appropriate consent. Their testimony in this regard was inconsistent and not persuasive. On direct examination he testified that during the period of his so-called intoxication, he left the Thanksgiving dinner earlier in the evening and returned to his business building where the deer carcass was left hanging. When he left the dinner according to his wife he was "pretty well in the bag." Yet he testified when he went to the building he was sufficiently in control of his faculties to remember that the deer needed to be refrigerated. He entered the building and he cut the deer in half and then he quartered the carcass with a Sawz-all. He then hung the deer in the cooler. He then went into the house and went to bed. On cross examination he somewhat recanted his earlier testimony.
Similarly, on direct examination he specifically stated that when the conservation officers arrived and asked to speak to him, his wife awoke him but she didn't tell him the reason for awakening him. "She said there was someone out side that wants to see you". His attorney asked "You didn't know it was the police? He said, "no". On cross examination he spontaneously offered "[S]he said there were some officers out there that wanted to see me." The court is not persuaded that he was unable to provide consent. Indeed, the defendant had sufficient intellectual vigor to answer appropriately all of the questions presented to him by the conservation officers, and sufficiently in possession of his faculties that he refused the conservation officer's inquiries regarding the name of his friend who allegedly shot the other deer.
The court finds that the defendant's claim fails because the defendant was coherent at the time of the search and freely consented to the search of his property. The officers did not raise their voices, did not imply that a warrant would automatically issue if the defendant did not consent to the search, nor did they argue with, threaten, or coerce the defendant in any way. In receiving the defendant's consent, the officers did not extend their search beyond the scope of that consent. Considering the totality of circumstances, the defendant's consent was a product of unconstrained choice. Accordingly, the evidence seized and any statements taken from the defendant were the result of a valid search. The defendant's Motion to Suppress is denied. CT Page 12907
Foley, J.