## STATE OF CONNECTICUT *v.* PATRICIA STERN
## (AC 20664)

Spear, Mihalakos and Flynn, Js.

Argued April 30—officially released September 18, 2001

*Milo J. Altschuler*, for the appellant (defendant).

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Kevin Lawlor,* assistant state's attorney, for the appellee (state).

*Opinion*

SPEAR, J. The defendant, Patricia Stern, appeals from the trial court's judgment of conviction, rendered after a conditional plea of nolo contendere pursuant to General Statutes § 54-94a,[1] of operating a motor vehicle while under the influence of alcohol in violation of General Statutes (Rev. to 1997) § 14-227a.[2] The defendant claims that the court improperly denied her motion to suppress the results of a blood alcohol test on the ground that her hospital records were obtained in the absence of (1) a search warrant as required by § 14-227a (*l*)[3] and

[1] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[2] General Statutes (Rev. to 1997) § 14-227a (a) provides: "Operation while under the influence. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

[3] General Statutes (Rev. to 1997) § 14-227a (*l*) provides: "Notwithstanding the provisions of subsection (c) of this section, evidence respecting the

(2) in the alternative, her voluntary consent. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On June 18, 1997, at approximately 7:48 p.m., the defendant was driving a Ford Bronco in West Haven when she lost control of the vehicle and it struck a parked car. Officer Brian Faughnan of the West Haven police department was dispatched to the scene and found the Bronco lying upside down, on its roof, and the defendant sitting on the steps of a nearby church, bleeding from her mouth. When he spoke with the defendant, Faughnan detected an odor of alcohol emanating from her breath. The defendant told Faughnan that she was the operator and sole occupant of the Bronco. An eyewitness confirmed her statement.

While the defendant was being treated for her injuries[4] inside an ambulance, Faughnan obtained a form

---

amount of alcohol or drug in the blood of an operator of a motor vehicle involved in an accident who has suffered or allegedly suffered physical injury in such accident, which evidence is derived from a chemical analysis of a blood sample taken from such person after such accident at the scene of the accident, while en route to a hospital or at a hospital, shall be competent evidence to establish probable cause for the arrest by warrant of such person for a violation of subsection (a) of this section and shall be admissible and competent in any subsequent prosecution thereof if: (1) The blood sample was taken for the diagnosis and treatment of such injury; (2) the blood sample was taken by a person licensed to practice medicine in this state, a resident physician or intern in any hospital in this state, a phlebotomist, a qualified laboratory technician, an emergency medical technician II or a registered nurse; (3) a police officer has demonstrated to the satisfaction of a judge of the Superior Court that such officer has reason to believe that such person was operating a motor vehicle while under the influence of intoxicating liquor or drug or both and that the chemical analysis of such blood sample constitutes evidence of the commission of the offense of operating a motor vehicle while under the influence of intoxicating liquor or drug or both in violation of subsection (a) of this section; and (4) such judge has issued a search warrant in accordance with section 54-33a authorizing the seizure of the chemical analysis of such blood sample."

[4] The defendant suffered cuts, abrasions, the loss of several teeth and an injury to her pelvis.

authorizing the hospital to release her medical records in connection with the accident. He then filled out the form using information from her operator's license, placed the form on a metal clipboard and asked her to sign it. He explained to her that she could sign the form voluntarily, but that if she did not want to, that would not be a problem, as he would apply for a search warrant to obtain the records. The defendant signed the form without objection. West Haven police subsequently obtained the defendant's hospital records using the signed authorization form and, on the basis of her elevated blood alcohol content, applied for and obtained a warrant for the defendant's arrest for driving while under the influence of intoxicating liquor in violation of § 14-227a.

After her arrest, the defendant filed a motion to suppress the chemical analysis of her blood alcohol content because the hospital did not release her records pursuant to a search warrant as required by § 14-227a (*l*). Following oral argument, the court issued a written memorandum of decision denying the motion to suppress on the ground that the defendant freely had consented to the release of her records when she signed the authorization form. The court discerned "no distinction between the obtaining of hospital records by consent from an injured operator suspected of operating under the influence of alcohol or drugs as opposed to consent freely given to enter one's home." The court reserved decision on the question of whether the defendant's consent was voluntary. Thereafter, the court held a separate hearing on the consent issue and concluded in an oral ruling that the defendant's consent was "free and voluntary." The defendant then entered a written plea of nolo contendere to the charge of operating a motor vehicle while intoxicated. This appeal followed.

"As a preliminary matter, we set forth the standard of review. Our standard of review of a trial court's

findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001).

I

The defendant first claims that the court improperly denied her motion to suppress because the search warrant requirement of § 14-227a (*l*) is mandatory and cannot be waived by a signed authorization form. She claims that the meaning of the statute is clear and unambiguous, and mandates that the chemical analysis of a blood sample taken from an injured operator is admissible in court *only* if obtained pursuant to a search warrant. We disagree.

We begin our analysis by noting that in its memorandum of decision, the court acknowledged the defendant's statutory argument, but decided the motion on the basis of fourth amendment constitutional principles concerning the consent exception to the search warrant requirement. "This court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case. . . . The best teaching of this [c]ourt's experience admonishes us not to entertain constitutional questions in advance of the strictest necessity. . . . Appropriate deference to a coordinate branch of government exercising its essential functions demands that we refrain from deciding constitutional challenges to its enactments until the need to do so is plainly evident." (Citation omitted; internal quotation marks omitted.) *Kish*

v. *Cohn*, 59 Conn. App. 236, 242, 756 A.2d 313 (2000). We therefore affirm the trial court's denial of the motion to suppress, not on the basis of constitutional principles, but on well established principles of statutory construction. See *Lauver* v. *Planning & Zoning Commission*, 60 Conn. App. 504, 511, 760 A.2d 513 (2000) (court may affirm proper result for different reason).

"Statutory interpretation is a matter of law over which this court's review is plenary. . . . In construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *Quigley-Dodd* v. *General Accident Ins. Co. of America*, 256 Conn. 225, 232, 772 A.2d 577 (2001).

The relevant language of § 14-227a (*l*) provides that evidence derived from the chemical analysis of a blood sample indicating the amount of alcohol or drug in the blood of an injured motor vehicle operator *shall* be competent evidence to establish probable cause, and admissible and competent in any subsequent prosecution, *if* a police officer has applied for and a judge has issued a search warrant authorizing its seizure. See footnote 3. "While we generally will not look for interpretative guidance beyond the language of the statute when the words of that statute are plain and unambiguous . . . our past decisions have indicated that the use of the word 'shall,' though significant, does not invariably create a mandatory duty. . . . In order to determine whether a statute's provisions are mandatory we have traditionally looked beyond the use of the word 'shall' and examined the statute's essential purpose.

. . . The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words. . . . A statutory provision of this type directs what is to be done but does not invalidate any action taken for failure to comply. . . . Furthermore, if there is no language that expressly invalidates any action taken after noncompliance with the statutory provisions, the statute should be construed as directory." (Citations omitted; internal quotation marks omitted.) *State* v. *Trahan*, 45 Conn. App. 722, 730–31, 697 A.2d 1153, cert. denied, 243 Conn. 924, 701 A.2d 660 (1997).

We conclude that a search warrant is not mandatory under § 14-227a (*l*). The United States Supreme Court has determined that a warrant requirement "interposes an orderly procedure under the aegis of judicial impartiality that is necessary to attain the beneficent purposes intended." *United States* v. *Jeffers*, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951). The requirement of a search warrant in subsection (*l*) is thus designed to secure order and dispatch in achieving the statute's essential purpose of arresting and prosecuting injured motor vehicle operators who are suspected of being intoxicated. Moreover, because the requirement is stated in affirmative terms and contains no language expressly excluding evidence obtained without a warrant, it leaves the door open for admitting evidence acquired on the basis of consent. Furthermore, had the warrant requirement been mandatory, the legislature

could have expressed that intention in more explicit terms by adding the word "only" before the word "if" to introduce the four conditions required for the valid seizure and admissibility of hospital records. The legislature knows how to use limiting language when it chooses to do so. *Vecca* v. *State*, 29 Conn. App. 559, 564, 616 A.2d 823 (1992). It did not choose to do so here. Accordingly, the search warrant requirement in subsection (*l*) is not mandatory under the test set forth in *Trahan*. That conclusion is consistent with our recent decision in *State* v. *Szepanski*, 57 Conn. App. 484, 490, 749 A.2d 653 (2000), where we stated that "§ 14-227a (*l*) is permissive, not restrictive, in nature; [blood alcohol content] evidence is always admissible if obtained in conformity with its requirements, rather than inadmissible unless obtained in a manner satisfying all of its requirements."[5]

The legislative history of the provision also supports that conclusion and, equally significant, persuades us that the legislature did not intend to exclude consent as a possible basis on which to acquire hospital records under § 14-227a (*l*). Subsection (*l*) was added to the statute in 1986 to address the special problems and difficulties encountered in gathering evidence pursuant to subsection (c). See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 4, 1986 Sess., pp. 1364–65. Subsection (c) provided in relevant part that "evidence respecting the amount of alcohol or drug in the defendant's blood or urine at the time of the alleged offense, as shown by a chemical analysis of the defendant's breath, blood or urine shall be admissible and competent provided: (1) The defendant was afforded a reasonable opportunity to telephone an attorney prior to the performance of the test and consented to the taking of

---

[5] In *State* v. *Szepanski*, supra, 57 Conn. App. 486, a Massachusetts district attorney obtained the blood alcohol report at issue by means of a subpoena issued by a Massachusetts grand jury and served on the hospital.

the test upon which such analysis is made . . . ." General Statutes (Rev. to 1985) § 14-227a, as amended by Public Acts 1985, No. 85-596. Under subsection (c), however, law enforcement authorities often were unable to establish the probable cause necessary to arrest suspected drunken drivers because injured drivers were transported to the hospital before police officers could conduct field sobriety tests or interview them. See Conn. Joint Standing Committee Hearings, supra, p. 1365. The requirements of obtaining consent and granting drivers the opportunity to contact an attorney before submitting to a blood test were especially unrealistic and difficult to satisfy in hospital emergency room situations, where drivers might be unconscious or their ability to follow instructions and respond to questions might be severely diminished due to trauma suffered in an accident. Id. In addition, hospitalized drivers aware of the "loophole" in subsection (c) regarding consent sometimes refused to submit to a blood test. Id., p. 1436. Accordingly, the purpose of subsection (*l*) was to allow the police, "*notwithstanding the provisions of subsection (c),*" to obtain test results from blood samples taken in the ordinary course of medical treatment for use in establishing probable cause to arrest such drivers, even *without* their consent or affording them the opportunity to contact an attorney. (Emphasis added.) Id., pp. 1367–68.

At no time was the search warrant requirement described as mandatory during hearings on the proposed amendment by the joint committee on the judiciary or during legislative debate. Indeed, consent was alluded to on several occasions as a possible means of obtaining the records under the proposed amendment. When Representative William L. Wollenberg asked state police Trooper Thomas Hogarty, representing then Commissioner of Public Safety Lester J. Forst, during a judiciary committee hearing whether blood samples

and, by implication, test results, no longer could be obtained for evidentiary purposes on the basis of consent, Hogarty replied in the negative.[6] Id., p. 1367. Hogarty later confirmed Representative Wollenberg's understanding that under the proposed amendment, "[a] person may or may not consent." Id., p. 1368. While debating the measure on the floor of the house, Representative Wollenberg also referred to the search warrant requirement as a safeguard rather than a mandatory requirement. 29 H.R. Proc., Pt. 13, 1986 Sess., p. 4669, remarks of Representative William L. Wollenberg. Our examination of the legislative history of subsection (*l*) thus indicates that the legislature contemplated the search warrant requirement as a means of protecting the rights of an injured operator where the operator could not, or would not, consent to release of the records.

Both the language and the legislative history of subsection (*l*) indicate that the purpose of the provision is not to eliminate consent as a means of obtaining test results, but to provide an *alternative* method of procuring the results when consent is not forthcoming. "The purpose of a search warrant is to ensure judicial authorization, in advance, of intrusions into constitutionally protected privacy." *State* v. *Eady*, 249 Conn. 431, 449, 733 A.2d 112, cert. denied, 528 U.S. 1030, 120 S. Ct. 551, 145 L. Ed. 2d 428 (1999), quoting *United States* v. *Green*, 474 F.2d 1385, 1390 (5th Cir.), cert. denied, 414 U.S. 829, 94 S. Ct. 55, 38 L. Ed. 2d 63 (1973). "This court should interpret a statute without turning a blind eye to common sense . . . ." *Fishbein* v. *Kozlowski*, 252 Conn. 38, 55–56, 743 A.2d 1110 (1999) (*Berdon, J.*, dissenting). To interpret the warrant requirement as prohibiting drivers from consenting to the release of their

---

[6] The following colloquy occurred in relevant part:

"Representative Wollenberg: This takes consent out of it?

"Trooper Hogarty: No, we could still go with consent. . . ." Conn. Joint Standing Committee Hearings, supra, pp. 1367–68.

hospital records would lead to absurd consequences and bizarre results completely inconsistent with the statute's clear purpose of obtaining records without intruding into an operator's constitutionally protected privacy. See id., 55 n.1 (*Berdon, J.*, dissenting). Interpreting the statute to permit consent thus "attains a rational and sensible result that bears directly on the purpose the legislature sought to achieve." (Internal quotation marks omitted.) *Zoning Commission* v. *Fairfield Resources Management, Inc.*, 41 Conn. App. 89, 115, 674 A.2d 1335 (1996). Accordingly, we conclude that the defendant's hospital records were obtained in conformity with the requirements of § 14-227a (*l*), and there is no need to consider the issue in light of fourth amendment principles.[7]

The defendant cites several cases, including *State* v. *Janson*, 20 Conn. App. 348, 566 A.2d 1377 (1989), cert. denied, 213 Conn. 815, 569 A.2d 550 (1990), *State* v. *Gilbert*, 30 Conn. App. 428, 620 A.2d 822 (1993), aff'd, 229 Conn. 228, 640 A.2d 61 (1994), and *State* v. *Corrigan*, 40 Conn. App. 359, 680 A.2d 312, cert. denied, 239 Conn. 901, 682 A.2d 1007 (1996), for the proposition that the literal requirements of the statute always must be met. The defendant misconstrues those cases.

In *Janson*, we ruled that, there being nothing in the record to indicate the identity of the person who drew the defendant's blood, the trial court improperly admitted into evidence the results of his blood test because the state had failed to satisfy the requirement of the statute that the blood be taken by a statutorily qualified person. *State* v. *Janson*, supra, 20 Conn. App. 352–53. The court stated that the "requirement directly promotes the underlying validity of the test itself and so must be strictly construed." Id., 352. In a footnote, the

---

[7] We again note, however, that a similar outcome is achieved under both a statutory and constitutional analysis.

court distinguished *Janson* from other cases in which we liberally construed the terms of § 14-227a (c) to admit into evidence tests that did not in all respects literally comply with subsection (c) requirements, so long as those requirements were in no way connected with promoting the underlying validity of the test. Id., 352 n.3. Here, strict construction of the statute as recommended in *Janson* is not necessitated, and a more liberal reading of the search warrant requirement in subsection (c) to permit consent as a means of obtaining hospital records is consistent with that case because the warrant requirement has no effect on the underlying validity of the test itself.

In *Gilbert,* we ruled that the statute is clear and unambiguous as to the admissibility of blood tests performed in a hospital, but we interpreted the provision regarding who could draw the blood to include a "medical technologist," even though medical technologists were not specifically designated as one of the categories of persons qualified for that purpose under the statute.[8] *State* v. *Gilbert,* supra, 30 Conn. App. 440–41. We agreed with the trial court that "a certified medical technologist is at least a qualified laboratory technician, [one of the listed categories,] in that the medical technologist's training encompasses and exceeds that of a laboratory technician." Id., 441. Although *Gilbert* does not involve the issue of obtaining a search warrant, the decision is instructive because it shows, as in *Szepanski,* that we sometimes have avoided a strict interpretation of subsection (*l*) in cases where a more liberal construction is reasonable and in conformity with its purpose.

---

[8] At the time the decision in *Gilbert* was issued, qualified persons under § 14-227a (*l*) (2) included a "person licensed to practice medicine in this state, a resident physician or intern in any hospital in this state, a qualified laboratory technician, an emergency technician II or a registered nurse . . . ." (Internal quotation marks omitted.) *State* v. *Gilbert,* supra, 30 Conn. App. 440–41.

Finally, we ruled in *Corrigan* that the sample of the defendant's blood taken en route to the hospital was not admissible in a subsequent court proceeding as evidence of her blood alcohol content because subsection (*l*), at the time of the offense, required that the blood sample be taken " 'at a hospital.' " *State* v. *Corrigan*, supra, 40 Conn. App. 362. We concluded that the phrase " 'at a hospital' " is clear and unambiguous, and refers exclusively to the physical confines of the building's structure. Id. We also were persuaded by the fact that subsection (*l*) was amended after the trial to include blood samples taken " 'while en route to a hospital,' " thus indicating that such results previously were inadmissible. Id., 363. *Corrigan* is inapposite, however, because here, the language describing the warrant requirement is more susceptible to interpretation under established principles of statutory construction, the legislative history of subsection (*l*) indicates that the requirement was not intended to exclude consent as a basis for obtaining hospital records and the relevant portion of the statute never has been amended.

## II

In the alternative, the defendant claims that the court improperly (1) concluded that she freely and voluntarily signed the authorization form that was used to obtain her hospital records, and (2) shifted the burden of proof from the state to the defendant to show that her consent was not free and voluntary. We decline to review the first claim and disagree with the second.

## A

The defendant first argues that the court's ruling was not legally and logically consistent with the facts because Faughnan testified on at least five occasions that he advised the defendant that if she did not sign the authorization form, he would procure a search warrant to obtain her hospital records.

The following additional facts are necessary for our resolution of the defendant's claim. At the hearing on the issue of consent, counsel for both parties made arguments as to whether the language Faughnan used in asking the defendant to sign the authorization form was coercive. In its oral decision, however, the court made specific findings only with respect to whether the defendant's hospital records indicated that she suffered any type of head injury or head trauma that might have affected her judgment, and prevented her from signing a valid and voluntary consent. The court ultimately found, after reviewing the record, that the defendant's injuries were not so severe as to prevent her from signing a valid and voluntary consent, and it never made a finding on the separate issue of whether Faughnan's comments to the defendant asking her to sign the form might have been coercive.

"The question whether consent to a search has in fact been freely and voluntarily given, or was the product of coercion, express or implied, is 'a question of fact to be determined from the totality of all the circumstances.' . . . As a question of fact, it is normally to be decided by the trial court upon the evidence before that court together with the reasonable inferences to be drawn from that evidence. . . . Such conclusions must be upheld unless they are legally or logically inconsistent with the facts found or unless they involve application of an erroneous rule of law material to the case." (Citations omitted.) *Dotson* v. *Warden*, 175 Conn. 614, 619, 402 A.2d 790 (1978). Here, the court specifically found that the defendant's injuries did not affect her judgment or prevent her from signing a valid and voluntary consent, but did not make a finding as to whether the officer's request that she sign the authorization form was coercive. In the absence of a specific factual finding on the officer's request, and in light of the defendant's failure to file a motion seeking an articulation concern-

ing that issue; Practice Book § 66-5; the record is inadequate for review. Practice Book § 61-10. We therefore decline to review the defendant's claim.

B

The defendant also claims that the court made statements in its oral decision on the issue of voluntary consent that unlawfully shifted the burden to her to prove that her consent was not free and voluntary. We disagree.

In its oral decision, the court concluded that "[a] review of the medical records here reveals little to dissuade the notion that the defendant's consent was free and voluntary." The court also stated that "on the whole, the court is not persuaded that the defendant's injuries, which were apparent . . . prevented her from signing a valid and voluntary consent."

"The state has the burden to establish the voluntariness of the consent, and the trial court's finding in that regard will not be upset by this court unless clearly erroneous." (Internal quotation marks omitted.) *State* v. *Cobb*, 251 Conn. 285, 315, 743 A.2d 1 (1999), cert. denied, 531 U.S. 841, 121 S. Ct. 106, 148 L. Ed. 2d 64 (2000). We conclude that the court did not shift the burden of proof on the issue of voluntary consent. The defendant interprets the language at issue far too broadly. The court neither stated nor suggested that it was shifting the burden of proof to the defendant either during the hearing on the issue of voluntary consent or in its oral decision. Moreover, "[j]udges are presumed to know the law . . . and to apply it correctly." (Internal quotation marks omitted.) *Fenton* v. *Connecticut Hospital Assn. Workers' Compensation Trust*, 58 Conn. App. 45, 54, 752 A.2d 65, cert. denied, 254 Conn. 911, 759 A.2d 504 (2000). Furthermore, the parties themselves understood that the burden of proof was on the state and expressed that view to the court. The state argued

at the hearing that "the state has shown—by more than the preponderance of the evidence—which is the standard of proof in these hearings--that [the defendant's] consent was voluntary." Defense counsel similarly argued that "the state has not sustained its burden on [the issue of consent] . . . ." The court did not disagree or take issue with counsels' comments. For the defendant now to claim that the court shifted the burden of proof to her seems somewhat disingenuous. We therefore conclude that the court's finding on the issue of voluntary consent was not clearly erroneous and that the court properly denied the motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.