[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION: (RE: MOTION FOR SUMMARY JUDGMENT #106)
FACTS
This case is a civil rights action, pursuant to42 U.S.C. § 1983,[1] arising from an alleged search by public health officials of a day spa business that was operated out of a private home. Doreen Bastian, the plaintiff, is the operator of the day spa, which she operates under the name Bastian's or Bastian's Day Spa.
Giovanni DiPaola and Jolanta Gawinski, the defendants, are officials of the department of public health. In an affidavit, DiPaola averred that he had received a complaint that the plaintiff was practicing electrolysis without a license. On April 22, 1996, the defendants entered the plaintiffs premises in order to investigate the complaint.
The plaintiff alleges that the defendants "broke into, entered and remained in the plaintiffs residence. . . ." It is undisputed that the defendants did enter the plaintiffs home and that the home also served as her place of business. The plaintiff alleges that the defendants CT Page 9387 committed these actions without a warrant and without exigent circumstances.
On October 13, 1998, the plaintiff filed a one count complaint against the defendants. On January 11, 2002, the defendants filed a motion for summary judgment. The court heard argument on the motion on April 22, 2002.
 DISCUSSION
Pursuant to Practice Book § 17-49, summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Cunhav. Colon, 260 Conn. 15, 18 n. 6, 792 A.2d 832 (2002). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law. . . ." (Citation marks omitted.) Appleton v. Board of Education, 254 Conn. 205,209, 757 A.2d 1059 (2000).
The defendants argue that they are entitled to summary judgment because: (1) they were statutorily authorized to enter the plaintiffs premises; (2) the plaintiff did not have a reasonable expectation of privacy; (3) the plaintiff consented to their entering the premises; and (4) the defendants have qualified immunity shielding them from liability.
In support of the motion, the defendants have submitted the DiPaola affidavit; an affidavit from Dianne Berg, a former employee of the plaintiffs day spa; and the full deposition of the plaintiff. In support of her objection to summary judgment, the plaintiff has also submitted her full deposition testimony.
 I
The defendants rely upon General Statutes §§ 19a-14 (a) (10) and (11) for the proposition that they could enter the plaintiffs premises without a warrant or a warrant exception. Section 19a-14 (a) (10) provides in relevant part that the department of health shall "[c]onduct any necessary review, inspection or investigation regarding qualifications of applicants for licenses or certificates, possible violations of statutes or regulations, and disciplinary matters. In connection with any investigation, the Commissioner of Public Health or said commissioner's CT Page 9388 authorized agent may administer oaths, issue subpoenas, compel testimony and order the production of books, records and documents. If any person refuses to appear, to testify or to produce any book, record or document when so ordered, a judge of the Superior Court may make such order as may be appropriate. . . ." Section 19a-14 (a) (11) provides that the department of health shall "[c]onduct any necessary investigation and follow-up in connection with complaints regarding persons subject to regulation or licensing by the department. . . ."
DiPaola avers in his affidavit that he and Gawinski had received a complaint that the plaintiff was performing electrolysis without a license. Because they were investigating a complaint, they claim the power to enter the plaintiffs home without any type of procedural safeguard.
While it is true that the legislature may enable public officials to act, the legislature cannot overturn the United States constitution by legislative enactment. See, e.g., Williams v. Taylor, 529 U.S. 362, 387
n. 13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[States] exercise powers under their domestic law, constrained by the Constitution of the United States."); City of Boerne v. Flores,521 U.S. 507, 529, 117 S.Ct. 2157,138 L.Ed.2d 624 (1997) ("If Congress could define its own powers by altering the Fourteenth Amendment's meaning, no longer would the Constitution be `superior paramount law, unchangeable by ordinary means.' It would be `on a level with ordinary legislative acts, and, like other acts, . . . alterable when the legislature shall please to alter it.'") State officials still must respect the fourth amendment of the constitution.
The defendants also raise the issue of a reasonable expectation of privacy. At the core of the plaintiffs broad allegations is the contention that the state acted impermissibly in entering her home. "Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." (Internal quotation marks omitted.) Blessing v.Freestone, 520 U.S. 329, 340, 117 S.Ct. 1353, 137 L.Ed.2d 569 (1997).
It is undisputed that the defendants, agents of the department of public health, were acting under color of state law. The question then becomes whether the defendants deprived the plaintiff of herfourth
amendment right to be "secure in [her person, house,] papers and effects against unreasonable searches and seizures. . . ." U.S. Const., amend IV.
"A Fourth Amendment claim requires a two-step analysis. The first question is whether a Fourth Amendment right exists. The second question CT Page 9389 is whether, in a case where there is a Fourth Amendment right, the search and seizure were reasonable. The major issues in the first question are whether governmental conduct is involved . . . and whether there is a reasonable expectation of privacy. . . ." United States v. Swart,679 F.2d 698, 700 (7th Cir. 1982).
The facts of this case reveal that the defendants entered the plaintiffs home without a warrant. No party disputes, however, that the plaintiff was using her home as a place of business as well. How openly she operated her business is in dispute and presents a dispute of material fact.
"When used as a place of business, the home has the same status under the Fourth Amendment as any other place of business." United States v.Cerri, 753 F.2d 61, 64 (7th Cir. 1985), cert. denied, 427 U.S. 1017,105 S.Ct. 3479, 87 L.Ed.2d 614 (1985). Using one's home as a place of business, however, does not destroy all expectations of privacy because the fourth amendment applies to commercial premises, albeit to a lower degree. Minnesota v. Carter, 525 U.S. 83, 90, 119 S.Ct. 469,142 L.Ed.2d 373 (1998). "[W]hen, as here, the home is converted into a commercial center, to which outsiders are invited for purposes of transacting . . . business, that business is entitled to no greater sanctity than if it were carried on in a store, a garage, a car, or on the street. A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant." (Emphasis added.) Lewis v.United States, 385 U.S. 206,211, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966), rehearing denied, 386 U.S. 939, 87 S.Ct. 951, 17 L.Ed.2d 811 (1967). See alsoUnited States v. Cerri, supra, 64, citing Lewis v. United States. The question thus becomes whether the defendants have shown that they entered the home in the same manner as would a private person.
The DiPaola and Berg affidavits claim that the plaintiff regularly took walk-in clients and that she had posted a sign on her door declaring the name of her business and her business hours. The defendants, however, have also attached the plaintiffs deposition which directly contradicts these facts. When asked whether she has "any type of sign located on [her] property indicating that [she operates] a business of some type", the plaintiff replied in the negative. The plaintiff testified that she only allowed clients into her home if they made an appointment beforehand. She testified that she did not keep any normal business hours and would not even open her door in order to receive a delivery. The plaintiff also testified that the defendants entered her premises without permission and without making an appointment. It is not in dispute that the defendants did not have an appointment and entered the business at a time of their own choosing. CT Page 9390
When a government agent makes a warrantless search of a business, the focus of an inquiry into whether a person has a reasonable expectation of privacy in her business is not whether the government agent believed that the dweller was doing something illegal but whether the agent entered the business as the public would. See United States v. Hutchinson,488 F.2d 484, 487 (8th Cir. 1973), cert. denied sub nom., Ennis v.United States, 417 U.S. 915,94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). This inquiry would make the facts concerning the openness of the business material facts.
"A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) United Oil Co. v. Urban Development Commission,158 Conn. 364, 379, 260 A.2d 596 (1969). The facts of whether the plaintiff saw clients without appointments and whether her home invited walk-in clients are material facts.
The parties disagree on the factual issues concerning the openness of the plaintiffs business. A genuine issue of material fact exists as to whether the plaintiff had a reasonable expectation of privacy.[2]
There are, however, some cases where a public official making an administrative search need not obtain a warrant before entering the business premises. The defendants' arguments hint at this possibility when they contend that § 19a-14 allowed them to enter the plaintiffs business.
"[U]nlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under theFourth Amendment, legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate theFourth
Amendment. . . . The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections." (Citations omitted.) Donovan v. Dewey, 452 U.S. 594, 598-99,101 S.Ct. 2534,69 L.Ed.2d 262 (1982). "The determinative factors to be considered are whether the industry affected is so closely regulated as to provide notice of the prospect of governmental intrusion and whether the statutory scheme enacted provides an adequate substitute for a warrant in terms of the certainty and regularity of its application." (Internal quotation marks omitted.) Bionic Auto Parts and Sales, Inc. v. Fahner,721 F.2d 1072, 1078 (7th Cir. 1983). Regulations under the statutory CT Page 9391 scheme may provide an adequate substitute for a warrant. Anobile v.Pelligrino, 284 F.3d 104, 116 (2nd Cir. 2002).
Section 19a-14 allows "any necessary review, inspection or investigation" and "any necessary investigation and follow-up." The regulations are no more specific. Section 19a-9-15 of the Regulations of Connecticut State Agencies provides that the department of health "may initiate and conduct any investigation that the agency deems necessary within the agency's jurisdiction."
The court need not determine whether day spas are so closely regulated that the regulations provide notice of inspections because they do not provide an adequate substitute for a warrant. In New York v. Burger,482 U.S. 691, 711, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), the U.S. Supreme Court, dealing with a warrantless search of a junkyard,, articulated what it believed to be an adequate substitute for a warrant: "(1) The New York statute in question alerted automobile junkyard owners that their commercial premises would be subject to periodic inspections pursuant to the statute; (2) the statute set forth the scope of the inspection and notified the operator as to who was authorized to conduct an inspection; and (3) the statute limited the time, place, and scope of the inspections." Lesser v. Espy, 34 F.3d 1301, 1308 (7th Cir. 1994), discussing New York v. Burger. The statute and regulations at issue in this case do not meet the second and third standards because they allow a public health department official to conduct any necessary investigation without limiting the scope of his investigation or his time or manner of investigating.
"Where the legislature has authorized inspection but made no rules governing the procedures that inspectors must follow, theFourth Amendment and its various restrictive rules must apply." (Internal quotation marks omitted.) Rush v. Obledo, 756 F.2d 713, 721 (9th Cir. 1985), quoting Donovan v. Dewey, supra, 452 U.S. 599. The court will not grant summary judgment on this basis because the statutory scheme at issue does not adequately substitute for warrant requirements.
 II
The defendants also contend that the plaintiff consented to the search of her premises. "The question whether consent to a search has in fact been freely and voluntarily given, or was the product of coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances. . . . As a question of fact, it is normally to be decided by the trial court upon the evidence before that court together with the reasonable inferences to be drawn from that evidence." (Internal quotation marks omitted.) State v. Stern, CT Page 939265 Conn. App. 634, 647, 782 A.2d 1275, cert. denied, 258 Conn. 935,785 A.2d 232 (2001). See also Anobile v. Pelligrino, supra, 284 F.3d 121.
The defendants argue in their brief that "Special Investigator Giovanni DiPaola makes it clear that the defendants believed the plaintiffs business was open to the public." The test, however, does not rely upon what the government agent believed. The test asks whether the facts indicate that the subject of the search has shown consent to a search.
Whether a person consents to a search should rarely be decided by a motion for summary judgment in a § 1983 action. First, the test for determining consent is a factual question of the subject's intent. Issues that require proof of the subjective intent or personal knowledge of the plaintiff are normally inappropriate for summary judgment. Jaser v.Fischer, 65 Conn. App. 349, 357, 783 A.2d 28 (2001); Kroll v. Sebastian,58 Conn. App. 262, 267, 753 A.2d 384 (2000). Second, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." (Internal quotation marks omitted.) Buell Industries v. Greater New YorkMutual Insurance, 259 Conn. 527, 558, 791 A.2d 489 (2002). The present case illustrates how this well-settled rule of summary judgment adjudication operates to defeat the motion. The plaintiff testified that she asked the defendants to leave her business and asked that they come back at another time. Such facts raise an inference that the plaintiff did not consent to a search.
 III
The defendants' final argument is that they have qualified immunity. "What is required to satisfy the defense of qualified immunity, which protects public officials from civil actions pursuant to § 1983 arising from the performance of their discretionary functions, is well settled. Although § 1983 on its face admits of no immunities . . . the United States Supreme Court has held that the qualified defense protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. . . . [For purposes of a § 1983 claim,] [w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken."(Citations omitted; internal quotation marks omitted.) Ham v.Greene, 248 Conn. 508, 519-20, 729 A.2d 740, cert. denied, 528 U.S. 929,120 S.Ct. 326, 145 L.Ed.2d 254 (1999). CT Page 9393
The parties do not contest that the defendants were performing discretionary acts. The parties do contest, however, whether the defendants acted reasonably in light of clearly established rules.
The facts of this case are at issue. The plaintiff has testified that the defendants entered her home without permission and refused to leave. DiPaola averred that the plaintiff had a sign on her home announcing the name of her business and business hours and, therefore, he lawfully entered the premises. The plaintiffs deposition testimony contradicted these facts.
"[C]rucial to the resolution of any assertion of qualified immunity is a careful examination of the record . . . to establish, for purposes of summary judgment, a detailed factual description of the actions of each individual defendant (viewed in the light most favorable to the plaintiff)." Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3rd Cir. 1996). Given these factual disputes, the court cannot make a determination of what action was reasonable because the court, on summary judgment, cannot determine what actually happened on April 22, 1996.[3]
 CONCLUSION
The motion for summary judgment is denied.
Kevin B. Booth, Judge