******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* LOUIS D.*
(AC 39335)

Lavine, Prescott and Bright, Js.

*Syllabus*

Convicted, under three informations, of the crime of criminal possession of a firearm and of three counts of the crime of criminal violation of a protective order, the defendant appealed to this court. On appeal, he claimed that the trial court improperly consolidated the three informations for trial and improperly denied his motion for a judgment of acquittal. The defendant claimed, inter alia, that the improper joinder instilled the presumption that he had a bad character and a propensity for criminal behavior, and that the prejudice could not be cured by the trial court's instructions. The defendant had been arrested and charged with violating a protective order that prohibited him from harassing the victim. Subsequently, he was arrested and charged with violating a protective order that prohibited him from having contact with the victim. Thereafter, he was arrested and charged with criminal possession of a firearm and violation a protective order that had required him to surrender all firearms and ammunition. Prior to the defendant's trial, the state filed a motion to consolidate the three informations, and the defendant filed a motion for severance, arguing that the joinder of the three cases would prejudice him severely. Following a hearing, the trial court granted the state's motion to consolidate. Subsequently, the state filed a consolidated long form information charging the defendant with one count of criminal possession of a firearm and three counts of criminal violation of a protective order. Following a jury trial, the defendant was convicted of the charges, and this appeal followed. *Held:*

1. The trial court's ruling granting the state's motion to consolidate the informations was not an abuse of discretion, the defendant having failed to demonstrate that the joinder of the informations caused him substantial or unfair prejudice; although all three charges for violation of a protective order alleged violations of increasingly restrictive protective orders with different conditions, the defendant's behavior underlying each violation was not so similar so as to substantially prejudice him, as the three informations involved discrete, factually distinguishable scenarios, the trial was not particularly lengthy or complex given that the presentation of evidence lasted four days and thirteen witnesses were called, there was little chance that the jury would have confused the evidence as to each charge given the drastically different factual scenarios underlying the charges, and the court further reduced any possibility of confusion by instructing the jury that it had consolidated separate cases to be tried together and that the jury was to consider each separately, which minimized any risk of prejudice that might have resulted from the joinder of the three cases.

2. The defendant's claim that the trial court improperly denied his motion for a judgment of acquittal as to the count of criminal possession of a firearm was unavailing, there having been sufficient evidence to establish that the state had proven beyond a reasonable doubt that the defendant was afforded notice and an opportunity to be heard prior to the issuance of the subject protective order on December 26, 2014, as required by statute ([Supp. 2014] § 53a-217 [a]); the plain language of that statute, when read in conjunction with other statutes, demonstrated that the requirement of "notice and an opportunity to be heard" in the statute was satisfied by the defendant's arraignment on December 26, 2014, at which the court informed him that a protective order was being issued against him and that he was prohibited from possessing firearms, and the defendant indicated that he understood that he could not possess firearms, if the defendant desired an evidentiary hearing on the matter, he could have requested such a hearing at the arraignment, and if the legislature had intended to imposed the specific requirement of an evidentiary hearing prior to the issuance of the protective order, it could have expressly done so but failed to include such language in the subject statute.

Argued December 11, 2017—officially released March 27, 2018

*Procedural History*

Substitute information, in the first case, charging the defendant with the crime of criminal violation of a protective order, and substitute information, in the second case, charging the defendant with the crime of criminal violation of a protective order, and substitute information, in the third case, charging the defendant with the crimes of criminal possession of a firearm and of criminal violation of a protective order, brought to the Superior Court in the judicial district of Fairfield, geographical area number two, where the cases were consolidated; thereafter, the matter was tried to tried to the jury before the court, *Holden, J.*; subsequently, the court denied the defendant's motion for a judgment of acquittal as to the count of criminal possession of a firearm; verdicts and judgments of guilty, from which the defendant appealed to this court. *Affirmed.*

*Guy P. Soares*, with whom was *Justin P. Soares*, for the appellant (defendant).

*Linda F. Currie-Zeffiro*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, state's attorney, and *Kevin Dunn*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Louis D., appeals from the judgments of conviction, rendered after a jury trial, of three counts of criminal violation of a protective order in violation of General Statutes § 53a-223 (a) and one count of criminal possession of a firearm in violation of General Statutes (Supp. 2014) § 53a-217 (a) (4) (A) arising out of three separate informations.[1] On appeal, the defendant claims that the trial court improperly (1) consolidated the three informations for trial, and (2) denied his motion for a judgment of acquittal. We disagree and, accordingly, affirm the judgments of the trial court.

The following facts and procedural history are relevant. In 2013, the victim commenced an action against the defendant seeking a dissolution of their marriage. On December 25, 2014, a dispute between the victim and the defendant escalated to the point where the defendant pushed the victim to the ground. The victim contacted the police, and the defendant was arrested for disorderly conduct. At the defendant's December 26, 2014 arraignment, the court, *Devlin, J.*, issued a protective order as a condition of the defendant's release on bail. The protective order permitted the defendant to live in the family residence, but required him to surrender all firearms and provided that he could not "assault, threaten, abuse, harass, follow, interfere with or stalk" the victim.

The defendant continued to reside in the family home with the victim and their son. On January 4, 2015, the defendant pushed the victim into a safe room in the basement and closed the vault door until she pleaded to be released. In February, 2015, the victim and the couple's son moved into the home of the victim's brother. On March 17, 2015, the court, *Doyle, J.*, issued a protective order that included the same terms as the December 26, 2014 protective order and permitted the defendant to return to the family residence one time with police to retrieve his belongings, but ordered him to otherwise stay away from that residence or wherever the victim lived.

On March 18, 2015, the victim and the couple's son moved back into the family residence. That night, the defendant telephoned the victim and threatened to take his own life and the life of the family dog if she did not cease all legal proceedings. The following day, the victim had a security company assess the family residence to install security cameras in the home. On March 19, 2015, the defendant telephoned the victim and threatened to break the security cameras. The victim informed the police, and a warrant was issued for the defendant's arrest. The defendant was arrested and charged in docket number CR-15-0283581-S with violating the March 17, 2015 protective order that prohib-

ited him from harassing the victim. On March 30, 2015, the court, *Pavia, J.*, issued a third protective order that the defendant not contact the victim in any manner.

On April 5, 2015, the defendant had his sister, who lived in the same duplex as the victim and his son, deliver an Easter basket to his son. The defendant's sister placed the basket in the foyer of the duplex. The victim noticed that the defendant had addressed an Easter card to her. The victim notified the police, and the defendant was arrested and charged in docket number CR-15-0284214-S with a violation of the March 30, 2015 protective order that prohibited him from having contact with the victim.

On July 23, 2015, the victim hired a locksmith to open the vault door of the safe room in the basement. Inside the safe room was a .22 caliber Ruger pistol along with rifle and pistol ammunition. The victim informed the police. The victim also found a .25 caliber Berretta handgun in the safe room and informed the police again. The Ruger and the Beretta were both registered to a friend of the defendant, to whom he had transferred registration of the Beretta and the Ruger years earlier when he was not permitted to possess firearms. The defendant was arrested on November 29, 2015, and was charged, by way of substitute long form information in docket number CR-15-0287545-S, with criminal possession of a firearm, and a violation of the December 26, 2014 protective order requiring him to surrender all firearms and ammunition.

Before trial commenced, the state moved for a consolidated trial on the charges in the three informations. The defendant filed a motion for severance arguing that the joinder of the three cases would prejudice him severely. Following a hearing, the court, *Holden, J.*, granted the state's motion to consolidate. The state then filed a consolidated long form information charging the defendant with one count of criminal possession of a firearm and three counts of criminal violation of a protective order.

Following a jury trial, the defendant was convicted of one count of criminal possession of a firearm and three counts of violation of a protective order. The defendant was sentenced to seven years incarceration, execution suspended after three and one-half years, with five years probation. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly consolidated the three informations for trial. We disagree.

"[I]n deciding whether to [join informations] for trial, the trial court enjoys broad discretion, which, in the absence of manifest abuse, an appellate court may not disturb." (Internal quotation marks omitted.) *State* v.

*LaFleur*, 307 Conn. 115, 158, 51 A.3d 1048 (2012). "At trial, the burden rests with the state to prove that joinder will not substantially prejudice a defendant. As our Supreme Court [has] clarified, when charges are set forth in separate informations, presumably because they are not of the same character, and the state has moved in the trial court to join the multiple informations for trial, the state bears the burden of proving that the defendant will not be substantially prejudiced by joinder pursuant to Practice Book § 41-19. The state may satisfy this burden by proving, by a preponderance of the evidence, *either* that the evidence in the cases is cross admissible *or* that the defendant will not be unfairly prejudiced pursuant to the *Boscarino* factors. . . . On appeal, the burden rests with the defendant to show that joinder was improper by proving substantial prejudice that could not be cured by the trial court's instructions to the jury." (Citation omitted; emphasis added; footnote omitted; internal quotation marks omitted.) *State* v. *Wilson*, 142 Conn. App. 793, 800–801, 64 A.3d 846, cert. denied, 309 Conn. 917, 70 A.3d 40 (2013).

In *State* v. *Payne*, 303 Conn. 538, 548, 34 A.3d 370 (2012), our Supreme Court overruled prior precedent and concluded "that the blanket presumption in favor of joinder . . . is inappropriate and should no longer be employed. . . . In cases where the evidence cannot be used for cross admissible purposes . . . the blanket presumption in favor of joinder is inconsistent with the well established evidentiary principle restricting the admission of character evidence." (Citations omitted; internal quotation marks omitted.)

"The court's discretion regarding joinder, however, is not unlimited; rather, that discretion must be exercised in a manner consistent with the defendant's right to a fair trial. Consequently, [in *State* v. *Boscarino*, 204 Conn. 714, 722–24, 529 A.2d 1260 (1987), our Supreme Court] identified several factors that a trial court should consider in deciding whether a severance may be necessary to avoid undue prejudice resulting from consolidation of multiple charges for trial. These factors include: (1) whether the charges involve discrete, easily distinguishable factual scenarios; (2) whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part; and (3) the duration and complexity of the trial. . . . If any or all of these factors are present, a reviewing court must decide whether the trial court's jury instructions cured any prejudice that might have occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Payne*, supra, 303 Conn. 545. The defendant argues that he was prejudiced by the court's joinder of the three informations on the basis of the first and third *Boscarino* factors only[2] and that the prejudice could not be cured by the trial court's instructions.[3] Specifically, the defendant argues that "[g]iven the inflammatory nature of the three separate cases, both alleging [the defendant's]

abuse as a husband and repeated violations of criminal protective orders, the improper joinder instilled the presumption that [the defendant] had a bad character and a propensity for criminal behavior. It increased the risk that the jury simply obtained the view that [the defendant] was just another abusive husband that this state is so accustomed to of late." We disagree.

As to the first *Boscarino* factor, the defendant's three informations involved discrete, factually distinguishable scenarios.[4] The defendant argues that his behavior in each case involved "several months of overlapping conduct" wherein the violation of a protective order "was at the core of each case." Although all three charges for violation of a protective order alleged violations of increasingly restrictive protective orders with different conditions, the defendant's behavior underlying each violation was not so similar so as to substantially prejudice him. One information alleged the defendant violated the March 17, 2015 protective order by making a telephone call to the victim on March 18, 2015, threatening the family dog, and making a telephone call on March 19, 2015, threatening to break security cameras at the family residence. Another information stemmed from the defendant's addressing an Easter card to the victim in violation of the no contact provision of the third protective order. A third information alleged that the defendant possessed firearms in violation of the December 26, 2014 protective order. Each information alleged easily distinguishable factual scenarios. In fact, the defendant acknowledges that "the factual scenarios for each separate offense were drastically different from one another."

With respect to the third *Boscarino* factor, the trial was not particularly lengthy or complex. "The factor, at its core, is a question of whether the jury will confuse the evidence as a result of a long, complicated trial." *State* v. *Perez*, 147 Conn. App. 53, 100, 80 A.3d 103 (2013), aff'd, 322 Conn. 118, 139 A.3d 654 (2016). The joinder of the three informations, which alleged three separate violations of protective order counts, did not result in a trial that was long; the presentation of evidence lasted four days and thirteen witnesses were called. See, e.g., *State* v. *David P.*, 70 Conn. App. 462, 469, 800 A.2d 541, 548 (2002) (concluding that six day trial, including argument and jury instruction, with thirteen witnesses not unduly long or complex), cert. denied, 262 Conn. 907, 810 A.2d 275 (2002). Furthermore, given the "drastically different" factual scenarios underlying the charges, there was little chance that the jury would confuse the evidence as to each charge.

The court further reduced any possibility of confusion by instructing the jury that it had consolidated separate cases to be tried together and that the jury was to consider each separately. This instruction minimized any risk of prejudice that might have resulted from the

joinder of the three cases. "[W]e presume, absent a fair indication to the contrary, that the jury followed the instruction of the court as to the law." *State* v. *Lasky*, 43 Conn. App. 619, 629, 685 A.2d 336 (1996), cert. denied, 239 Conn. 959, 688 A.2d 328 (1997). We conclude that the defendant has not demonstrated that the joinder of the informations caused him substantial or unfair prejudice. Accordingly, we conclude that the court's ruling on the state's motion to consolidate the informations was not an abuse of discretion.

II

The defendant also claims that the court improperly denied his motion for judgment of acquittal as to the count of criminal possession of a firearm. We disagree.

After the state rested, the defendant filed a motion for a judgment of acquittal as to the charge of criminal possession of a firearm on the ground that the state failed to prove that he was given notice and an opportunity to be heard, as required by § 53a-217 (a), prior to Judge Devlin issuing the December 26, 2014 protective order. Judge Holden denied the defendant's motion.

"The standard of appellate review of a denial of a motion for a judgment of acquittal has been settled by judicial decision. . . . The issue to be determined is whether the jury could have reasonably concluded, from the facts established and the reasonable inferences which could be drawn from those facts, that the cumulative effect was to establish guilt beyond a reasonable doubt. . . . The facts and the reasonable inferences stemming from the facts must be given a construction most favorable to sustaining the jury's verdict." (Internal quotation marks omitted.) *State* v. *Balbuena*, 168 Conn. App. 194, 199, 144 A.3d 540, cert. denied, 323 Conn. 936, 151 A.3d 384 (2016).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Agron*, 323 Conn. 629, 633–34, 148 A.3d 1052 (2016). "Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *State* v. *Peters*, 287 Conn. 82, 87, 946 A.2d 1231 (2008).

We begin with the language of the pertinent statute. Section 53a-217 (a) provides in part: "A person is guilty

of criminal possession of a firearm [or] ammunition . . . when such person possesses a firearm [or] ammunition . . . and . . . (4) knows that such person is subject to (A) a . . . protective order of a court of this state that has been issued against such person, after *notice and an opportunity to be heard* has been provided to such person in a case involving the use, attempted use or threatened use of physical force against another person. . . ."[5] (Emphasis added.)

The defendant argues that the state presented no evidence as to the element of "notice and an opportunity to be heard" on the charge of criminal possession of a firearm. He argues that § 53a-217 (a) (4) (A) required the court, prior to issuing the December 26, 2014 protective order, to hold a hearing at which the defendant could contest the necessity of a protective order. The defendant argues that, at the December 26, 2014 arraignment, the court did not even inform him that he had a right to such a hearing. The state contends that the arraignment itself provided the defendant with the required notice and opportunity to be heard. We agree with the state.

The text of § 53a-217 (a) (4) (A) provides that the defendant be given "notice and an opportunity to be heard. . . ." The meaning of this statutory phrase may be clarified by looking at the words with which it is associated in the statute. See *State* v. *Agron*, supra, 323 Conn. 636. The notice and opportunity to be heard is to be provided to the defendant prior to the issuance of a protective order. Although § 53a-217 is a firearms statute located in the "Miscellaneous Offenses" chapter of the Penal Code, subsection (a) (4) (A) clearly references protective orders. Section 1-2z directs us first to consider the text of the statute and its relationship to other statutes before consulting other sources. See *State* v. *Agron*, supra, 636.

The statutory scheme involving criminal protective orders informs our understanding of what is required by the phrase "notice and opportunity to be heard." Our Supreme Court in *State* v. *Fernando A.*, 294 Conn. 1, 981 A.2d 427 (2009), held that the statutory scheme concerning family violence protective orders "permit[s] the trial court to issue a criminal protective order at arraignment after consideration of oral argument and the family services report . . . [and] require[s] the trial court to hold, at the defendant's request made at the initial hearing, a subsequent hearing within a reasonable period of time wherein the state will be required to prove the continued necessity of that order by a fair preponderance of the evidence . . . ." Id., 13. The court emphasized that the family violence protective order statutes[6] do not "entitle a defendant to an evidentiary hearing beyond consideration of the parties' arguments and the family services report prior to the initial issuance of a criminal protective order at arraignment, which may well occur within hours of the alleged inci-

dent of family violence." (Emphasis omitted.) Id., 23–24.

If the legislature had intended to impose the specific requirement of an evidentiary hearing prior to the issuance of the protective order, it could have expressly done so. See id., 11–13. For example, General Statutes § 54-82r (a), which concerns protective orders prohibiting the harassment of a witness, provides for a "hearing at which hearsay evidence shall be admissible" after which the court must find by a preponderance of the evidence the necessity of issuing such an order. The legislature did not include similar language in § 53a-217.

"It is axiomatic that, when interpreting the terms of one statute, we are guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . . Legislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum. Every new act takes its place as a component of an extensive and elaborate system of written laws. . . . Construing statutes by reference to others advances [the values of harmony and consistency within the law]. In fact, courts have been said to be under a duty to construe statutes harmoniously where that can reasonably be done. . . . Moreover, statutes must be construed, if possible, such that no clause, sentence or word shall be superfluous, void or insignificant." (Internal quotation marks omitted.) *State* v. *Agron*, supra, 323 Conn. 638. Applying this principle to the terms of § 53a-217 (a) (4) (A), we conclude that the plain language of the statute, as read in connection with other statutes, demonstrates that an arraignment satisfies the requirement of "notice and an opportunity to be heard."

At trial, the state admitted as a full exhibit the transcript of the defendant's December 26, 2014 arraignment. The transcript reveals that the court informed the defendant that a protective order was being issued against him and that he was prohibited from possessing firearms. The defendant indicated that he understood that he could not possess firearms, and he inquired as to whether he was allowed to go home, to which question the court responded affirmatively. Accordingly, this transcript reveals that defendant was provided with an opportunity to be heard prior to the issuance of the protective order. If the defendant desired an evidentiary hearing on the matter, he could have requested such a hearing at the arraignment. In reviewing the evidence in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence to establish that the state had proven beyond a reasonable doubt that the defendant was afforded notice and an opportunity to be heard prior to the issuance of the December 26, 2014 protective order. Accordingly, we conclude that the court did not err in denying the defendant's motion for judgment of acquittal.

The judgments are affirmed.

In this opinion the other judges occurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[1] All references to § 53a-217 are to the 2014 supplement to the General Statutes.

[2] Accordingly, we do not analyze the second *Boscarino* factor, i.e., whether the crimes were of a violent nature or concerned brutal or shocking conduct on the defendant's part. See, e.g., *State* v. *Ellis*, 270 Conn. 337, 376, 852 A.2d 676 (2004) (limiting analysis to *Boscarino* factor addressed by defendant).

[3] The defendant argues that the court improperly applied a blanket presumption in favor of joinder despite our Supreme Court's having abolished the previous blanket presumption in favor of joinder in *State* v. *Payne*, 303 Conn. 538, 548, 34 A.3d 370 (2012). The court did not express its reasons for granting the state's motion to consolidate, and the defendant did not move for an articulation. We do not infer error from a silent record. See *State* v. *Andriulaitis*, 169 Conn. App. 286, 295, 150 A.3d 720 (2016). Rather, "[j]udges are presumed to know the law . . . and to apply it correctly." (Internal quotation marks omitted.) *State* v. *Stern*, 65 Conn. App. 634, 648, 782 A.2d 1275, cert. denied, 258 Conn. 935, 785 A.2d 232 (2001).

It also is unclear whether the court granted the state's motion to consolidate the informations on the basis that the evidence in the three cases was cross admissible, or, alternatively, that the evidence was not cross admissible, but the defendant was still, nonetheless, not prejudiced by joinder pursuant to the *Boscarino* factors. On appeal, the defendant does not discuss the question of cross admissibility except in his reply brief in response to the state's contention that the evidence was cross admissible. We do not address claims raised for the first time in a reply brief. See *State* v. *Toro*, 172 Conn. App. 810, 818, 162 A.3d 63, cert. denied, 327 Conn. 905, A.3d (2017). Consequently, we do not decide whether the evidence relating to the charges set forth in each information would have been cross admissible in separate trials. See *State* v. *Delgado*, 243 Conn. 523, 536 n.14, 707 A.2d 1 (1998) (when appellate court concludes that defendant has not met burden of showing joinder resulted in substantial injustice, it need not decide whether evidence of one charge would be cross admissible at separate trials).

[4] We note that the existence of discrete, easily distinguishable factual scenarios weighs in favor of joinder. See, e.g., *State* v. *Rodriguez*, 91 Conn. App. 112, 118–21, 881 A.2d 371 (2005).

[5] We note that § 53a-217 (a) (4) (A) was amended in 2016 by No. 16–34 of the Public Acts, which removed the words "and an opportunity to be heard." The 2014 supplement of the statute, which includes the phrase "opportunity to be heard," is at issue in this case. See footnote 1 of this opinion.

[6] See General Statutes §§ 54-63c (b) and 46b-38c.

————————————————